No. 44,474

State of Kansas, *Appellee*, v. Larry J. Dearman, *Appellant*.

(422 P. 2d 573)

Opinion filed January 21, 1967.

*Larry D. Kirby*, of Wichita, argued the cause, and was on the brief for the appellant.

*Martin E. Updegraff*, Deputy County Attorney, argued the cause, and *Robert C. Londerholm*, Attorney General, and *Keith Sanborn*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is a criminal action in which the defendant appeals from a conviction for first-degree robbery in violation of G. S. 1949 (now K. S. A.) 21-527. He was thereafter sentenced pursuant to the provisions of G. S. 1949 (now K. S. A.) 21-530 and 21-107a. Appeal has been duly perfected.

The appellant specifies various trial errors relating to the admission of evidence and statements made by counsel in closing argument, and he also specifies the overruling of his motion for a new trial.

The facts indicated by the evidence may be briefly stated as follows:

On the evening of January 2, 1965, Larry J. Dearman (defendant-appellant), Harvey D. Loyd and Jack Ashley were together and went to Griff's Burger Bar, behind which they parked Ashley's 1956 Chevrolet. The three proceeded through the back door. Loyd was carrying a gun in his hand and told the three employees of Griff's Burger Bar to lie down on the floor. Whereupon, the appellant asked who the night manager was, and upon identifying himself the night manager was directed by the appellant to open the safe. Thereafter, the manager was also made to lie down on the floor, face down, and all of the employees were tied. Approximately $900 in money was taken from the safe by the three robbers. During the

robbery Ashley and the appellant wore clothing about their faces so they were not identifiable, but Loyd did not.

On the 4th day of January, 1965, at approximately 1:30 p. m., the appellant and Loyd were arrested in the city of Wichita while in a 1965 Chevrolet which they had rented from a local rental agency. A jacket, identified as the appellant's, was found lying on the back seat of the 1965 Chevrolet automobile, and in the coat pocket was a gun—a Beretti, caliber 7.65. It was identified as the holdup gun.

Detective Stewart, one of the arresting officers, was asked on the witness stand before the jury whether he interrogated the appellant, and he replied:

"No, I talked to Mr. Dearman. He told me he didn't want to talk to me at all. He wanted to talk to his attorney. He said that was his right; I didn't press the issue any further. To the best of my recollection I had no further conversations with him about this incident."

Ashley, one of the participants in the robbery, testified on behalf of the state, giving all of the details which occurred on the evening in question, from the time they first met until the time they had divided and disposed of the money. Most of the evidence admitted over objection, and concerning which the appellant complains on appeal, was presented by the state to corroborate Ashley's testimony.

The evidence discloses that the appellant called his brother on the telephone while in jail and told his brother he had some money at a place called "Carl's farm" near Wichita, where the appellant had worked in the past, and that the appellant needed a tooth brush and tooth paste.

When the appellant's brother arrived, Detective Williamson arranged for the meeting of the appellant and his brother, and advised the appellant concerning his right to remain silent, that anything he said could be used against him, and that he had a right to an attorney. The appellant's brother then informed the appellant that the officers knew who the third man was in the robbery. The appellant then asked Detective Williamson who it was, and he was told "Whitey." The appellant then asked, "Who the hell is Whitey?" Detective Williamson then took out a picture and showed it to the appellant, after which the appellant said, "You got the wrong goddamned man."

The appellant contends that the trial court erred in admitting testimony of Officer Stewart regarding the appellant's refusal to

make any statements prior to consultation with an attorney. The appellant also complains that the court erred in permitting the county attorney in his closing argument to make reference to such refusal.

On this point the county attorney in his closing argument said:

"And when he was talked to about the robbery he didn't deny it and he didn't say he was somewhere else. He said, 'I'm not going to tell you anything.' And he didn't, except what he slipped and I don't know if he was, or had forgotten, even about his clever denials, that he was going to make or not, but he told Detective Williamson, in the Sedgwick County jail that Whitey Coppenbarger was not involved in the robbery of Griff's Burger Bar. Now, that is for you to remember, and it is good, strong, solid evidence in this case."

The case of *Escobedo v. Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (1964), teaches that the constitutional right to counsel arises at least when an accused is arrested and perhaps even at an earlier stage when police attention begins to focus upon the accused, whenever that may be. Though not applicable to this case (the instant case having been tried in the year 1965), a later decision, *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), further elaborates upon the constitutional rights of an individual when he is taken into custody or otherwise deprived of his freedom by the authorities.

Thus, when the appellant was placed under arrest by the officers in this case and said he wanted to see a lawyer, he was exercising a federal constitutional right. At this juncture he also had the constitutional right to remain silent.

It is apparent the prosecuting attorney was not content to leave the evidence disclosing the appellant's assertion of his constitutional rights stand without comment. As we construe the prosecuting attorney's argument, the jury was justified in believing the state was asserting this evidence against the appellant substantively as an admission of guilt. A similar case was before the United States Court of Appeals, First Circuit, in *Fagundes v. United States*, 340 F. 2d 673 (1965). There the court said:

". . . Thus when Fagundes said when he was arrested and handcuffed that he wanted to see a lawyer he was exercising a federal constitutional right. And certainly at that juncture he had the constitutional right to keep silent. . . . His assertion of one constitutional right, his right to counsel, and his reliance upon another constitutional right, his right to remain silent when charged with crime, we think cannot be used against him substantively as an admission of guilt, for to do so would be to render the constitutional rights mere empty formalities devoid of practical substance. . . ." (p. 677.)

We think the foregoing decision is persuasive and hold that evidence disclosing that one charged with crime has asserted his constitutional right to counsel, and his constitutional right to remain silent, cannot be used against him substantively as an admission of guilt.

It is reversible error to permit a jury to draw an inference adverse to one accused of crime from his reliance upon his constitutional right to silence and to the advice of counsel. The right to silence on arrest is akin to the right to decline to take the witness stand in one's own defense.

The appellant contends the trial court erred in allowing Officer Williamson to testify that the appellant made certain statements to him in the jail when the appellant's brother was present. We think this point has no merit for two reasons: First, the appellant made no objection to its admission in evidence at the trial; and second, even if objection had been made, the appellant himself requested Officer Williamson to tell him who the third party was, and the conversation progressed, all after the appellant had been warned of his rights.

Other errors specified by the appellant have been given careful consideration, but upon the record here presented no single one has sufficient merit to warrant further consideration.

The judgment of the lower court is reversed with directions to grant a new trial.