No. 47,361

THE STATE OF KANSAS, *Appellee*, v. AARON L. BLY, *Appellant*.

(523 P. 2d 397)

Opinion filed June 15, 1974.

*John J. Ambrosio,* of Topeka, argued the cause, and was on the brief for the appellant.

*Donald P. Morrison,* Assistant District Attorney, argued the cause, and *Vern Miller,* Attorney General, and *Gene M. Olander,* District Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal case in which the defendant-appellant, Aaron L. Bly, was convicted of two counts of aggravated robbery as defined by K. S. A. 1970 Supp. 21-3427 and one count of aggravated assault on a law enforcement officer under the provisions of K. S. A. 1970 Supp. 21-3411. The evidence presented at the trial established the following factual situation: On March 28, 1971, at about 9:42 p. m. three armed black males wearing masks entered Sutton's Food Center, Inc. a large supermarket in north Topeka. One man proceeded to the courtesy booth area where he confronted Norman Goodman, the store manager, and demanded money. This person received slightly over $4,000 from the store safe and one riot gun and one handgun belonging to the store. A second armed robber approached Dora Kessinger, an employee at a checkout counter, and demanded money. The third robber took a billfold from William Griffin a customer in the store. Mr. Goodman described the robber who had confronted him as wearing a coat and gloves similar to those worn by the defendant Bly when he was apprehended a short time after the robbery. Mr. Goodman also testified that this member of the holdup gang had a build similar to that of the defendant. Goodman further stated that from the sound of the robber's voice he believed the man who confronted him to be a Negro although he did not pretend to have absolute ability to make this determination. Dora Kessinger, William Griffin and Joyce Morrison, another store employee, all testified that in their judgment the holdup men were Negroes because of the sound of their voices.

Immediately after the robbery Norman Goodman observed a car rapidly leaving the area of the store which he described as a 1967 or 1968 Chevrolet, light blue or gray. He called the police who immediately broadcast the circumstances of the armed robbery over the police radio system. At 9:48 p. m. Topeka police officers Hamlin and Sandburg observed a parked vehicle meeting the description furnished by Mr. Goodman. When the officers attempted to get close to the vehicle it took off and another car that had been parked nearby started backing down the street at a high rate of speed with its lights off. The officers gave pursuit to this second vehicle which was later identified as a 1970 Oldsmobile owned by the defendant's uncle, Calvin Baines. During the pursuit the officers observed two black males in the car who fired on the police car, striking the patrol vehicle right above the driver's head. In the course of the chase a wheel fell off the Oldsmobile at which time the two black occupants abandoned the vehicle while it was still in motion. The driver fell as he moved away from the car and ran toward an area where the defendant Bly was subsequently apprehended. A search of Calvin Baines' vehicle later disclosed the stolen money, two firearms, one of which was the riot gun taken from the store, a mask similar to the one used in the robbery and some bullets.

Approximately two minutes after the suspects had fled Calvin Baines' car, Shawnee county sheriff's officers Hardy and Canfield observed a black male running across the street from one alley to another a few blocks away from where the vehicle had been abandoned. Hardy and Canfield received gunfire from this man. The description of this person as given by Hardy and Canfield was similar to that of the defendant Bly and was also similar to the description given of the man observed by Officer Sandburg. Approximately three minutes after the shooting occurrence the defendant was apprehended about three-fourths of a block away from the shooting incident. It was observed that he was sweaty, out of breath, with the crotch and knee of his slacks torn. The pistol taken from the store was located almost directly across the street from where the defendant was apprehended. Bullets like those found in the Baines' Oldsmobile were found in the defendant's pocket. Residents in the area where the defendant was apprehended stated that they did not know him and knew of no reason why he should be in the vicinity. The arresting officers testified that when they observed the defend-

ant they told him to stop but he kept walking away from the officers. They told him to stop again and he sat down on the sidewalk. The case presented by the state was strong and pointed the finger of guilt directly at the defendant, Aaron L. Bly. At the trial it was undisputed that an aggravated robbery occurred and that in the course of the pursuit the robbers had fired at the police officers. The only real area of contest at the trial involved the identity of the defendant as one of the robbers.

At the close of the state's evidence the defendant Bly took the witness stand and testified that he came to Topeka from Kansas City in his uncle's 1970 Oldsmobile to visit his girl friend who lived in the 300 block of Lafayette Street in Topeka. The defendant stated that although he had been to her house three times in the month prior to the incident, on this trip he took a new route and got lost. He testified that he came up to another car and approached its occupants to ask directions. He testified that the men in the car pointed a gun at him and commandeered his uncle's 1970 Oldsmobile. He ran from the area and fell while running in an attempt to get help. According to the defendant he ran five blocks without making inquiry or seeking assistance at any of the numerous residences in the vicinity. He testified that he observed a man running in the immediate vicinity where he had been apprehended whose physical description and wearing apparel were similar to his own. On rebuttal it was demonstrated by the state that the area in which defendant was apprehended, the 1400 block on Paramore Street, was a substantial distance away from the area where he had planned to go, the 300 block on Lafayette Street. Apparently the defendant did not explain the presence of the bullets in his pocket which matched the description of those found in the getaway car. At the close of the trial the jury returned a verdict of guilty and the defendant was sentenced to the custody of the Director of Penal Institutions. The defendant has brought a timely appeal to this court claiming a number of trial errors.

The defendant first contends that the trial court erred in allowing the witnesses to the robbery at Sutton's supermarket to testify as to the race of the robbers based upon hearing their voices. As pointed out above four witnesses in the store testified that from hearing the robbers' voices they believed the robbers were Negroes. We find nothing improper in the admission of this testimony into evidence. The witnesses had the right to testify as to what they observed.

Furthermore it was undisputed that the occupants of the getaway vehicle who fired on the officers were Negroes. We find this point without merit.

The defendant as his second point contends that the trial court committed prejudicial error in admitting into evidence a record of conviction from the United States District Court in Missouri which showed that the defendant Aaron L. Bly had been convicted of a bank robbery in Kansas City, Kansas. The only evidence of the circumstances surrounding the commission of the bank robbery is contained in the written record of conviction which stated as follows:

" 'It is adjudged that the defendant has been convicted upon his plea of not guilty and a finding of guilty by this Court sitting as trier of the facts, November 2, 1971, of the offense of feloniously taking by force and violence money in the sum of $6,317.00 from a bank the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing the aforesaid acts did jeopardize the lives of certain employees by the use of a dangerous weapon, . . .' "

It should be noted that the date of this conviction for bank robbery was November 2, 1971, approximately seven months after the armed robbery of Sutton's market in Topeka. The trial court in admitting evidence of the Kansas City bank robbery did so under the authority of K. S. A. 60-455 and restricted its application to the issue of the identity of the defendant as one of the men who robbed Sutton's market. The defendant takes the position that the evidence on the bank robbery should not have been admitted into evidence on the issue of identity for the reason that the trial court did not have sufficient information to determine its relevancy.

In support of his position the defendant reasons that he was being tried for the armed robbery of a *grocery store* whereas the prior conviction was for *bank robbery*. There were at least three persons involved in the grocery store robbery whereas the record of conviction did not disclose the number of people involved in the bank robbery. The robbers were wearing masks at the time of the robbery of the grocery store; the record of conviction did not mention the wearing apparel of the robbers. The record of conviction merely indicated a dangerous weapon which could mean a knife, gun or any other type of weapon. The robbery in the case at bar involved a .22 caliber pistol and two .38 caliber pistols. Simply stated the thrust of defendant's argument is that the scanty record of the Kansas City bank robbery conviction did not disclose sufficient

details to raise a reasonable inference that the bank robber was the same person who committed the armed robbery of Sutton's food market.

The state takes the position that a record of a conviction of bank robbery is relevant to show identity in another armed robbery case. It points out what it contends are the elements of similarity which make the bank robbery conviction admissible. It is undisputed that the defendant committed the bank robbery in Kansas City; money in the sum of $6,317 was taken in the bank robbery while in the instant case another large sum of money was taken, $4,150; there is similarity of location since both robberies occurred in northeast Kansas locations; the robberies occurred within seven months of each other; there was a similarity in the manner in which United States currency was taken since in both robberies a dangerous weapon was involved. Although recognizing that there is a dissimilarity between banks and large grocery stores, the state maintains that it is common knowledge that both types of businesses have large amounts of money on the premises. Based upon these factors the state maintains that the armed robbery of Sutton's market was sufficiently similar to the bank robbery to make the evidence of the bank robbery conviction relevant on the issue of identity.

The problem which is presented in this case arises under K. S. A. 60-455 which provides as follows:

"60-455. Other crimes or civil wrongs. Subject to section 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but, subject to sections 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

Since 60-455 became effective on January 1, 1964, it has caused this court and the trial courts of Kansas a great amount of difficulty in applying its general provisions to specific cases. The question of the admissibility of evidence of other crimes committed by a defendant frequently arises in the trial of criminal cases and in this court on appeal. We believe that it would be of benefit to the bench and bar of this state for this court to review the principles of law pertaining to the subject in the hope that future misunderstanding and trial error can be avoided.

The legal concepts contained in 60-455 may be found in Kansas

decisional law as it existed prior to the adoption of the statute. As early as the turn of the century the general rule was recognized that testimony as to the commission of offenses by a defendant in a criminal case, not in any way connected with that charged in the information, and which would tend to degrade and prejudice him, should be carefully excluded from the jury. (*The State v. Kirby,* 62 Kan. 436, 63 Pac. 752.) Exceptions were recognized to the rule prior to the adoption of 60-455. The general rule and the exceptions which developed have been repeatedly recognized and applied by many decisions of this court. A number of the cases are set forth in *State v. Wright,* 194 Kan. 271, 398 P. 2d 339. In *State v. Stephenson,* 191 Kan. 424, 381 P. 2d 335, the general rule along with the exceptions is stated as follows:

"The rule against the admissibility of evidence of other similar but independent offenses should always be strictly enforced, and to justify any departure therefrom the evidence should come under one of the well-recognized exceptions to the general rule, among which are identity of the person committing the offense, to prove *scienter* or guilty knowledge, to prove intent, to show *inclination* or motive, to prove plan, scheme or system of operation, and to rebut a special defense." (Syl. ¶ 2.) (Emphasis supplied.)

It should be observed that prior to the enactment of 60-455 the cases consistently emphasized that the rule against the admissibility of evidence of other offenses should be strictly enforced.

It is suggested by the authors of Vernon's Kansas Statutes Annotated, Code of Civil Procedure, at page 376, that evidence of other offenses is ordinarily excluded because of the great danger of prejudice to the defendant which would result from the admission of such evidence. The authors point out there are at least three types of prejudice which might result from the use of other crimes as evidence. First, a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Secondly, the jury might conclude that the defendant deserves punishment because he is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed. Thus, in several ways the defendant may be prejudiced by such evidence.

Since the enactment of 60-455 it has been broadly stated by this court on several occasions that the rule of evidence stated in 60-455

as applied to criminal proceedings has not materially changed the case law as it developed in Kansas prior to the enactment of that statute. (*State v. Wright,* supra.) This statement is not entirely correct because as a matter of fact the provisions of 60-455 more strictly limit the admissibility of evidence of other crimes than did the case law as it existed prior to its enactment. Our decisions interpreting 60-455 have established certain basic principles as guidelines to be followed by the trial courts in applying the statute. By way of summary some of these basic principles are the following:

1. By its specific language 60-455 makes inadmissible evidence of other crimes or civil wrongs to prove the defendant's *disposition* to commit crime. Our more recent cases hold without equivocation that K. S. A. 60-455 expressly excludes evidence of other crimes if its only purpose is to show the defendant's disposition, inclination, attitude, tendency or propensity to commit crime. (*State v. Clingerman,* 213 Kan. 525, 516 P. 2d 1022; *State v. Seely,* 212 Kan. 195, 510 P. 2d 115; *State v. Taylor,* 198 Kan. 290, 424 P. 2d 612; and *State v. Jenkins,* 203 Kan. 354, 454 P. 2d 496.) We specifically disapprove the language in *State v. Lewis,* 195 Kan. 389, 405 P. 2d 796, and that of any other cases where we have stated that evidence of other crimes is admissible to prove inclination, tendency or any other words which mean the same as "disposition" to commit crime.

2. To be admissible under 60-455 evidence of a prior conviction must be relevant to prove one or more of the material factors of proof specified in the statute. There are eight of them listed: *i. e.,* (1) motive, (2) opportunity, (3) intent, (4) preparation, (5) plan, (6) knowledge, (7) identity and (8) absence of mistake or accident. (*State v. Clingerman,* supra [p. 527].)

3. The rule set forth in 60-455 is to be strictly enforced. This means that evidence of other offenses or civil wrongs is not to be admitted without a good, sound reason. The rule of strict enforcement is recognized in *State v. Gunzelman,* 210 Kan. 481, 488, 502 P. 2d 705; *State v. Anderson,* 202 Kan. 52, 446 P. 2d 844; and *State v. Wright,* supra.

4. In determining whether or not to admit evidence of other crimes a trial court must employ a "balancing" procedure, *i. e.* a court must weigh the probative value of the evidence offered against its tendency to prejudice the jury. If the potentiality of natural bias and prejudice overbalances the contribution to the rational development of the case, the evidence must be barred. We wish to emphasize in passing that if trial judges content themselves with merely determining whether the particular evidence of other crimes fits into one of the approved exceptions, they may lose sight of the underlying policy of protecting the accused against unfair and sometimes unbridled prejudice. (M. C. Slough, *Other Vices, Other Crimes: An Evidentiary Dilemma,* 20 Kan. L. Rev. 411.) The obligation of a trial court to exercise its sound judicial discretion in determining the admissibility of other crimes is discussed in some depth in *State v. Davis,* 213 Kan. 54, 515 P. 2d 802. In *Davis* we emphasized that relevancy is not the only test to be ap-

plied in determining whether or not evidence of other crimes has probative value. Probative value consists of more than logical relevancy. Evidence of other crimes has no real probative value if the fact it is supposed to prove is not *substantially in issue*. In other words the element or elements being considered (*e. g.*, intent, motive, knowledge, identity, etc.) must be substantially in issue in the case before a trial court should admit evidence of other crimes to prove such elements. Examples might be helpful. Where criminal intent is obviously proved by the mere doing of an act, the introduction of other crimes evidence has no real probative value to prove intent. Where an armed robber extracts money from a store owner at gunpoint his felonious intent is obvious from the act itself and is not really in dispute. Hence evidence of other robberies to prove intent should not be admitted since the element of intent is not really at issue in the case. Likewise where a defendant admits that he committed the act and his presence at the scene of the crime is not disputed, a trial court should not admit other crimes evidence for the purpose of proving identity. The obvious reason is that such evidence has no probative value in the case. To summarize, other crimes evidence has no probative value if the fact it is supposed to prove is not substantially in issue, because such evidence fails to advance the search for truth; it serves no purpose to justify whatever prejudice it creates, and must be excluded for that reason.

5. Before exercising its discretion by balancing probative value against prejudice, the trial court should conduct a hearing in the absence of the jury to determine the probative value of the other crimes evidence as to one or more of the eight elements to which such evidence might be relevant. (*State v. Gunzelman*, supra [p. 488].) This hearing might well be held at a pretrial conference or at some time prior to the trial to avoid delays after a jury has been empaneled. Such a procedure would also tend to prevent unfair surprise.

6. Generally in every case where evidence of other crimes is admitted solely under the authority of 60-455 the trial court should give an instruction limiting the purpose for which evidence of the similar offense is to be considered. (*State v. Rambo*, 208 Kan. 929, 495 P. 2d 101; *State v. Roth*, 200 Kan. 677, 438 P. 2d 58.) It should be noted, however, that where evidence disclosing another criminal offense has a direct bearing on and relation to the commission of the offense itself, it is admissible without a limiting instruction. (*State v. Martin*, 208 Kan. 950, 495 P. 2d 89.) Stated in another way, it is not prejudicially erroneous for the trial court to fail to give a limiting instruction on the purpose of evidence of other crimes when the challenged evidence is admissible independently of K. S. A. 60-455. (*State v. Ralls*, 213 Kan. 249, 515 P. 2d 1205.)

7. The limiting instruction should not be in the form of a "shotgun" which broadly covers all of the eight exceptions set forth in 60-455. An instruction concerning the purpose of evidence of other offenses should only include those elements of K. S. A. 60-455, which appear to be applicable under the facts and circumstances. Those elements which are obviously inapplicable should not be instructed upon. (*State v. Seely*, supra; *State v. Masqua*, 210 Kan. 419, 502 P. 2d 728.)

8. The other offense may be admissible even if it occurred subsequent to the offense for which the defendant is being tried as well as prior thereto.

(*State v. Morgan*, 207 Kan. 581, 485 P. 2d 1371; *State v. Darling*, 197 Kan. 471, 419 P. 2d 836; *State v. Miller*, 204 Kan. 46, 460 P. 2d 564.)

9. To be admissible under 60-455 it is not necessary for the state to show that the defendant was actually convicted of the other offense. The statute specifically includes other crimes or *civil wrongs*. In fact an acquittal of the defendant of a prior offense does not bar evidence thereof where otherwise admissible. The acquittal bears only upon the weight to be given such evidence. (*State v. Darling*, supra.)

10. Remoteness in time of a prior conviction, if otherwise admissible, affects generally the weight and probative value and not the admissibility of the evidence. (*State v. O'Neal*, 204 Kan. 226, 461 P. 2d 801.) In *State v. Owen*, 162 Kan. 255, 176 P. 2d 564, we held, however, that a trial court abused its discretion in admitting evidence of a previous homicide committed 28 years before.

11. Where a similar offense is offered for the purpose of proving *identity*, the evidence should disclose sufficient facts and circumstances of the other offense to raise a reasonable inference that the defendant committed both of the offenses. In other words to show that the same person committed two offenses it is not sufficient simply to show that the offenses were violations of the same or a similar statute. There should be some evidence of the underlying facts showing the manner in which the other offense was committed so as to raise a reasonable inference that the same person committed both offenses. As pointed out by Mr. Justice Kaul in *State v. Johnson*, 210 Kan. 288, 502 P. 2d 802:

"'The quality of sameness is important when pondering the admission of other crimes to prove identity.'" (p. 294.) (Emphasis supplied.)

The leading case in Kansas on the admissibility of other crimes to prove identity is *State v. King*, 111 Kan. 140, 206 Pac. 883. There common factors in three different homicides tended to show that the accused was the perpetrator of the crime for which he was being tried. The circumstances surrounding the deaths of the three victims were so similar in their dominant aspects as to raise a reasonable inference that the murderer of one of these victims was the murderer of all. In *State v. Johnson*, supra, the defendant was charged with murder by use of a knife. The defendant Johnson had previously been convicted of two homicides committed by stabbing the victim in a manner almost identical to the offense with which he was charged. Identity was the crucial issue in the case and the two prior homicides were held properly admissible for the purpose of identifying Johnson as the killer. In the recent case of *State v. Lora*, 213 Kan. 184, 515 P. 2d 1086, the defendant was charged with four burglaries. The evidence showed that the burglar in four distinct and separate instances followed a similar elaborate ritual after gaining entrance to each house. No property of any value was taken. In all four instances the burglar located leotards, panty hose

or sweaters in order to make masks to be worn by him. He located scissors on the premises which he used to fashion the masks. He obtained pictures of the women and moved them into a bedroom or kitchen. In each case he located cold cream which he placed in readiness. We held that exhibits showing the similarity of the offenses were properly admitted into evidence for the purpose of identifying the defendant to prove those offenses where good eye-witness identification was not available. In summary what we wish to emphasize is that where evidence of other crimes is offered to prove identity it is not sufficient simply to show that the defendant has been convicted of the same statutory offense. To prove identity it is necessary to introduce evidence of the underlying facts and circumstances to show that the crimes were committed in a similar manner so as to raise a reasonable inference that the person who committed one crime committed the other. Any language in our cases indicating to the contrary is disapproved.

On the basis of the record before us we conclude that the subsequent conviction of the defendant for bank robbery should not have been admitted in evidence in the present case to prove identity. The authenticated copy of the bank robbery conviction does not sufficiently show the facts, circumstances or the means by which the bank robbery was accomplished. There may or may not have been sufficient similarity in the facts of the bank robbery case to prove the identity of defendant as the robber in the present case. However, the erroneous admission of evidence during a trial does not in every case require a reversal of a conviction. (*State v. O'Neal*, supra.) A defendant is entitled to a *fair* trial but not a perfect one, for there are no perfect trials. (*Brown v. United States*, 411 U. S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565; *Bruton v. United States*, 391 U. S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) Not every admission of inadmissible evidence can be considered to be reversible error; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. K. S. A. 60-261 requires the courts of Kansas to disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. This rule known as the harmless error rule applies unless the error is of such a nature as to amount to a denial of substantial justice. (*State v. Fleury*, 203 Kan. 888, 457 P. 2d 44.)

Under all of the facts and circumstances of this case we are convinced that the admission of the Kansas City bank robbery conviction could not have affected the result of the trial and that such

admission by the trial court was harmless error. The circumstances of the robbery, the subsequent chase and the apprehension of the defendant Bly within a matter of minutes after the robbery are undisputed. The evidence established that an aggravated robbery occurred at Sutton's food market on the evening of March 28, 1971, and that an aggravated assault on law enforcement officers occurred in the subsequent pursuit of the robbers. The sole and only issue in the case was the identity of the defendant as one of the robbers. The evidence was undisputed that one of the robbers was wearing a coat and gloves similar to the ones the defendant was wearing when he was apprehended. The physical description of one of the robbers was similar to the physical description of the defendant. It was undisputed that the 1970 Oldsmobile owned by the defendant's uncle (and which defendant Bly admitted having in his possession) sought to avoid detection by the police and later was found to contain the stolen money and a firearm taken from the store, a mask similar to the one used in the robbery and some bullets. After the Oldsmobile was disabled a black male was observed running away firing a gun at the police officers. Approximately three minutes after this shooting occurrence the defendant was apprehended about three-fourths of a block away from the shooting site. He was sweaty, out of breath and his clothing was torn. The pistol taken from the store was located directly across the street from where the defendant was apprehended. Bullets found in the defendant's pocket were like those found in his uncle's Oldsmobile. On these facts we do not see how a jury could reasonably have brought in a verdict other than guilty. In view of this overwhelming evidence of guilt the erroneous admission of the Kansas City bank robbery conviction could not reasonably have changed the result of the trial. In our judgment its admission into evidence in this case was harmless error. The conclusion which we have reached here is similar to that which was reached by the court in State v. O'Neal, supra. We wish to emphasize, however, that in a closely contested case where there is a substantial conflict in the evidence as to guilt, the improper admission of another criminal offense might well justify a reversal of the case and the granting of a new trial. Our holding of harmless error in this case is based solely upon the particular record before us.

As another point on this appeal the defendant contends that the trial court erred in refusing to grant a mistrial because on cross-examination of the defendant and in his summation the prosecutor

referred to the fact that the defendant had failed to come forward with his story of innocence at the time he was arrested and not until the time of the trial approximately two years after the commission of the offense. Defendant takes the position that where a defendant exercises his constitutional right to remain silent, it is constitutionally impermissible for the prosecutor to comment on such fact or otherwise bring the matter before the jury. The defendant refers to the following portion of the cross-examination of the defendant by the prosecutor, Donald P. Morrison:

"Q. (By Mr. Morrison) What happened when you were apprehended?

"A. They advised me of my rights to remain silent, something like that, stated anything I say would be held against me, and put handcuffs on me.

"Q. All right. Isn't it a fact, sir, that almost two years and two months has elapsed since this incident?

"A. That is correct.

"Q. Isn't it a fact, sir, that this is the first time that you have ever come forward with this story about what occurred?

"MR. PHILLIPS: Your Honor please, may we approach the bench?

"THE COURT: Yes.

.   .   .   .   .   .   .   .   .   .   .   .   .

"MR. PHILLIPS: If Your Honor please, I would like to move for another mistrial at this time for the following reason: the defendant, whoever he might be, when he is apprehended has a right to remain silent. He has a right to have an attorney. The fact that he chooses to exercise that right has nothing to do with whether or not he later chooses to exercise the right to discuss the matter with anybody he pleases. I think the State is using the fact that he exercised his constitutional right to cast aspersions on the fact that he now chooses to waive his constitutional right, which I feel is improper.

"THE COURT: Well, do you have knowledge of any prior inconsistent statements that he made?

"MR. MORRISON: No, he has never made any statement. I submit to the Court that when he elects to testify, that he waives his constitutional right. Certainly, that would appear to be a completely legitimate question, in my own mind. Further, if the Court were disposed to rule against me, I would ask the Court to consider, he has not answered the question, and consequently, no prejudice has resulted.

.   .   .   .   .   .   .   .   .   .   .   .   .

"THE COURT: Well, I think the Court will sustain the objection, but overrule the motion for a mistrial. I think I will instruct the jury that an accused has a constitutional right to remain silent, and for that reason, the question as put by the State is improper and should not be considered for any purpose.

"MR. PHILLIPS: Well, I would like my objection noted for the record.

"THE COURT: Well, it is noted for the record.

"MR. PHILLIPS: Okay.

"THE COURT: Do you object to the admonition by the Court, or would you rather have the Court not state anything?

"MR. PHILLIPS: I think my preference is that you give the admonition. I don't think it cures the problem."

Although not clearly shown in the record the brief of the state indicates that following the trial court's sustaining the objection to the question, it instructed the jury as to the defendant's right to remain silent and admonished the jury to disregard the question and any answer given.

Counsel for defendant also complains of the following remarks made by the prosecutor in his summation:

". . . And what happens when he finds that there are police in the area? They tell him to stop. Does he say, 'Hey, they stole my car, give me some help, the man went that away'?
He sits down.

"Consider the logic of all these matters. In the interest of justice, return a verdict of guilty. Thank you.

. . . . . . . . . . . . . . .

"MR. PHILLIPS: If Your Honor please, it appears that Mr. Morrison has done it again, and I am referring to the fact that the defendant did not state anything at the time of arrest, in other words, he exercised his right not to say a doggone thing. The Court has already ruled that it's impermissible to ask him why it was two years before he came forward with his statement. This is the same thing. He didn't have to say anything at that time, and you can't draw any inferences from it.

"THE COURT: I think the State's argument was within proper bounds in this context, so the objection is denied.

"MR. PHILLIPS: Okay."

The issue to be determined is essentially this: Where a defendant elects to testify and takes the stand and states on direct examination that he was not an active participant in the crime does the prosecutor have the right on cross-examination and in his summation to show that the defendant did not come forward with such an explanation at the time he was arrested for the purpose of attacking his credibility? We have answered this question in the affirmative in prior decisions of this court. In *State v. Jackson,* 201 Kan. 795, 443 P. 2d 279, cert. denied 394 U. S. 908, 22 L. Ed. 2d 219, 89 S. Ct. 1019, the defendant took the stand and told a story which kept him away from the immediate scene of the crime. If the story was believed by the jury an acquittal would necessarily result. We held that it was not error for the state to cross-examine him as to why he did not make the statement during or following his arrest, and where the defendant denied having had an opportunity to make a statement it was not error to show in rebuttal that he was asked to make a statement but refused to do so. In the opinion we stated as follows:

"The state had the right to test the credibility of the witness and impeach the testimony. This is a time when 'silence speaks louder than words.' The question immediately arose—if the appellant had such a positive defense why had he not so informed the law enforcement officers during or after his arrest? Normally an innocent man would take the first opportunity to state the fact. Silence until the time of trial casts a serious doubt upon appellant's testimony and the state had a right to refute any reason he gave for his claimed abnormal conduct . . ." (p. 798.)

We further stated that the matter being a proper subject for cross-examination it was also a proper subject for a comment by the prosecuting attorney in his closing argument. In *Jackson* we held specifically that the procedural safeguards securing to the accused the privilege against self-incrimination during custodial interrogation do not apply to cross-examination of a defendant who has taken the witness stand in his own defense. Furthermore we held that when a defendant takes the witness stand he takes his integrity and character with him and he cannot complain because he is subjected to the same inquiries and tests as other witnesses. We approved and followed *Jackson* in *State v. Schroeder*, 201 Kan. 811, 443 P. 2d 284; *State v. Wade*, 206 Kan. 347, 479 P. 2d 811; *State v. Crowe*, 207 Kan. 473, 486 P. 2d 503; and *State v. Nirschl*, 208 Kan. 111, 490 P. 2d 917.

The defendant relies upon *State v. Dearman*, 198 Kan. 44, 422 P. 2d 573, and *State v. Bowman*, 204 Kan. 234, 461 P. 2d 735, where we held in substance that where the defendant does not take the witness stand it is reversible error for the state to bring out in the state's evidence or mention in the summation of the prosecutor that the defendant refused to give a statement at the time of his arrest and thereby to infer that he was guilty because he had exercised his constitutional right to remain silent. We distinguish *Dearman* and *Bowman* on the basis that in those cases the defendant did not take the witness stand.

The defendant also relies on decisions of the United States Court of Appeals for the 10th Circuit holding that a district attorney can not either in cross-examination of the defendant or in his summation comment on the fact that the accused did not tell his story at the time he was arrested, citing *Johnson v. Patterson*, (1973) 475 F. 2d 1066; and *Deats v. Rodriguez*, (1973) 477 F. 2d 1023. Both *Johnson* and *Deats* were split decisions of a panel of three judges. The question presented has been decided to the contrary by the Fifth Circuit in *United States v. Ramirez*, (1971) 441 F. 2d 950 and *United*

*States v. Quintana-Gomez,* (1974) 488 F. 2d 1246 and by the Third Circuit in *United States Ex Rel. Burt v. State of New Jersey,* (1973) 475 F. 2d 234. The Supreme Court of the United States has not resolved this conflict of decisions among the courts of appeal and has not ruled directly on the issue presented. However, in *Harris v. New York,* 401 U. S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643, the Supreme Court held that a defendant's statements to police officers could be used to impeach the credibility of his trial testimony even if they had been obtained in violation of *Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The Supreme Court also held in *Raffel v. United States,* 271 U. S. 494, 70 L. Ed. 1054, 46 S. Ct. 566, that when an accused takes the stand as a witness in his own behalf he may, within the limits of appropriate rules, be cross-examined as to the facts in issue and that the failure of an accused who becomes a witness in his own behalf to deny or explain evidence of incriminating circumstances of which he may have knowledge may be the basis for an adverse inference, and that he may be cross-examined thereon.

We believe that the rationale of *State v. Jackson,* supra, and the other cases which have followed it is sound. The search for truth should be the primary object of the justice system. There is a vast difference in the case of an accused who voluntarily takes the stand, and of the accused who refrains from testifying. When a defendant testifies he may be impeached like any other witness. The use of pretrial silence for impeachment depends on whether, in the circumstances presented, there is such inconsistency between silence and testimony as to reasonably permit the use of silence to impeach the defendant's credibility. In the case at bar the defendant testified that his uncle's car was taken away from him at gunpoint and that he ran into the surrounding neighborhood seeking help and assistance. Yet when the police officers approached him and called to him to stop he first walked away and then sat down without mentioning the fact that his automobile had forcibly been taken away from him. Under the circumstances we believe that there was such an inconsistency between his silence at the time he was arrested and his testimony at the trial as reasonably to permit the use of his silence to impeach his credibility. Cross-examination on the defendant's silence and comment by the prosecutor on summation were proper for impeachment purposes because common sense would lead us to the conclusion that if the

defendant's story was true, upon first encountering the police officers the defendant would have welcomed them with open arms and immediately sought their assistance in regaining possession of his uncle's car. We believe that reason and justice require us to follow the prior decisions of this court discussed above and those federal decisions which have reached the same result. For these reasons we find that the defendant was not denied a fair trial or due process of law because of the prosecutor's cross-examination of defendant and his comments in his summation on the fact that the defendant did not come forth with his story at the time he was arrested.

Other points have been raised and briefed by the defendant on this appeal. They have been fully and carefully examined by the court. It would serve no useful purpose to lengthen this opinion by discussing them. It is sufficient to say the district court did not commit reversible error or abuse its discretion in making the rulings complained of. It follows that the judgment of the district court must be and it is hereby affirmed.

FATZER, C. J., SCHROEDER and FONTRON, JJ., concur in the result.