No. 48,776

STATE OF KANSAS, *Appellee,* v. JAMES JOHNSON, JR., and PHILLIP TAYLOR, *Appellants.*

(573 P.2d 976)

Opinion filed November 5, 1977.

*David R. Hills,* of Kansas City, argued the cause, and was on the brief for the appellant, James Johnson, Jr., and *Dennis L. Horner,* of Kansas City, argued the cause, and was on the brief for the appellant, Phillip Taylor.

*Dennis L. Harris,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the two defendants, James Johnson, Jr. and Phillip Taylor, were jointly tried and convicted of aggravated robbery (K.S.A. 21-3427). The evidence was undisputed that a Vickers Service Station in Kansas City, Kansas, was robbed by two armed black males on the morning of November 11, 1975. The sole issue in the case was the identity of the defendants as the robbers who committed the offense. At the time the robbery occurred, the only person present on the premises to identify the robbers was John Smith, the operator of the filling station. His identification of the defendants as the robbers was subject to question. It was vigorously contested by the defendants. Each of the defendants had alibi witnesses. They testified that the defendants were at another place at the time the robbery occurred. Following their conviction, Johnson and Taylor appealed to this court claiming trial errors.

Both defendants have raised the same basic points on the appeal. Both question the sufficiency of the evidence to sustain

their convictions. On this point the record shows that at the trial the victim, John Smith, identified the defendants as the individuals who robbed him on November 11, 1975. Such testimony was sufficient to permit the case to be submitted to the jury.

The first point raised on the appeal by the defendants is that the trial court improperly permitted the prosecutor repeatedly to get before the jury the fact that the defendants remained silent and refused to make a statement at the time they were arrested. The defendants contend that such conduct by the prosecutor was highly prejudicial for two reasons: (1) It permitted the jury to draw an inference that the defendants were guilty because they relied on their constitutional right of silence, and (2) it enabled the prosecution to use for impeachment purposes the defendants' silence at the time of their arrest and after they had received *Miranda* warnings, in violation of the due process clause of the Fourteenth Amendment. To bring this issue into proper focus, it is necessary to examine the record to determine what occurred at the trial. The matter of the defendants' silence at the time of arrest was first brought up during the direct examination of Detective Al Sanchez in the state's case in chief. Sanchez testified that on November 11th, the day of the robbery, he had a conversation with defendant Johnson, who was then in custody. He advised Johnson of his rights and asked if Johnson wanted to sign a waiver form and talk to Sanchez about the incident. Johnson stated he did not want to sign the form waiving his rights. The unsigned waiver of rights form was then marked as state's exhibit No. 3 and identified by Sanchez. Following this the prosecutor asked Sanchez if the defendant Johnson had *refused* to sign the waiver of rights and Sanchez answered in the affirmative. At the close of the state's evidence the prosecutor offered into evidence exhibit No. 3, the unsigned waiver, and the trial court admitted the exhibit in evidence over defendant's objection. At that time the trial judge indicated to counsel that he had a question as to the propriety of admitting the unsigned waiver form into evidence.

After the state rested, the defendant Johnson took the stand in his defense and testified that he told Sanchez he would not sign the waiver of rights or make a statement unless his mother was there and that Sanchez had refused to permit him to call his mother. Johnson then testified that he had told Sanchez where he had been at the time of the robbery. On cross-examination of

Johnson the prosecutor directed Johnson's attention to the unsigned waiver form and asked Johnson if this was the form "you did not want to sign." Johnson's counsel objected to any further inquiry into the unsigned waiver because it was clearly for the purpose of prejudicing the jury because of the defendant's refusal to sign the same. The court let the question and answer stand. Immediately thereafter, the prosecutor again called Johnson's attention to the unsigned waiver and asked Johnson if Detective Sanchez had read it to him, to which question Johnson testified that he had.

As to defendant Phillip Taylor, the prosecutor questioned Detective Sanchez in regard to Taylor's refusal to make a statement following Taylor's signing a waiver of rights form. At the request of the prosecutor, Sanchez identified state's exhibit No. 4, the waiver of rights form signed by Taylor. Sanchez then testified as to Taylor's statements after the form was signed as follows:

"Q  Did you talk with him afterwards?

"A  After he signed that, I asked him if he knew anything of the robbery and he denied any knowledge of the armed robbery.

"Q  Did you ask him where he was on the morning of November 11th?

"A  No, sir, he would not give any information, he just said he knew nothing of it and that was it. After signing the waiver he was *very uncooperative*, and he was then taken back to the jail.

"Q  The only report or information he gave to you about it was, 'I wasn't there'?

"A  He didn't say he wasn't there, he only said that he knew nothing about it." (Emphasis supplied.)

In his final argument the prosecutor made the following observations:

". . . I asked each one of their witnesses, 'Did you ever make a statement? Did you ever put anything in writing? Did you ever tell the police? When was the first time you talked to anybody about this?', and you will recall their answers— they talked to Mr. Hills (defense counsel) about a week ago. . . ."

Although the record indicates that the prosecutor was only referring to the defense alibi witnesses, the defendants insist that the reference could be construed as referring to Johnson's and Taylor's silence after their arrest. The prosecutor's use of the word "witnesses" could be interpreted as including the defendants, since each defendant had testified for the defense. It also should be noted that the trial court in its instructions told the jury that "no inference of guilt may be drawn from a defendant's failure to

sign a waiver of rights form or give a statement to the police."

On the entire record we are convinced that the repeated reference by the prosecutor in the trial to the fact that defendant Johnson had failed to sign a waiver of rights form and make a statement and that the defendant Taylor, although signing a waiver, was thereafter uncooperative, was prejudicial and requires the granting of a new trial to the defendants. It is reversible error to permit a jury to draw an inference adverse to one accused of crime from his reliance upon his constitutional right to silence. (State v. Bowman, 204 Kan. 234, 461 P.2d 735; State v. Dearman, 198 Kan. 44, 422 P.2d 573.) In Bowman this court declared:

"In State v. Dearman, 198 Kan. 44, 422 P.2d 573, we stated at page 46 of the opinion:

" 'Thus, when the appellant was placed under arrest by the officers in this case and said he wanted to see a lawyer, he was exercising a federal constitutional right. At this juncture he also had the constitutional right to remain silent.

" '. . . A similar case was before the United States Court of Appeals, First Circuit, in Fagundes v. United States, 340 F.2d 673 (1965). There the court said:

" ' ". . . Thus when Fagundes said when he was arrested and handcuffed that he wanted to see a lawyer he was exercising a federal constitutional right. And certainly at that juncture he had the constitutional right to keep silent . . . His assertion of one constitutional right, his right to counsel, and his reliance upon another constitutional right, his right to remain silent when charged with crime, we think cannot be used against him substantively as an admission of guilt, for to do so would be to render the constitutional rights mere empty formalities devoid of practical substance. . . .' " (p. 677.)

" 'We think the foregoing decision is persuasive and hold that evidence disclosing that one charged with crime has asserted his constitutional right to counsel, and his constitutional right to remain silent, cannot be used against him substantively as an admission of guilt.'

"The federal decisions are to the effect that the prosecution may not use at a trial the fact that an individual stood mute, or claimed his privilege against self-incrimination, in the face of an accusation made at police custodial interrogation. (Miranda v. Arizona, 384 U.S. 436, 16 L. ed 2d 694, 86 S. Ct. 1602, 10 A.L.R. 3d 974.)" (pp. 235-236.)

In this case the trial court over defendants' objection permitted the state to inject again and again before the jury the fact that the defendant Johnson had refused to sign a waiver of rights form and that the defendant Taylor, although signing such a form, was thereafter uncooperative in denying that he had any knowledge of the robbery. This evidence, combined with the prosecutor's argument, in our judgment permitted the jury to draw the inference that the defendants were probably guilty because they chose to

remain silent at the time of their arrest. The defendants are entitled to a new trial.

As their second point on the appeal both defendants contend that the trial court erred in refusing to require Detective Sanchez to produce for defense counsels' examination certain field notes which contained statements of the state's witnesses taken shortly after the robbery occurred. At the pretrial conference the prosecution in good faith informed the court and defense counsel that the state had disclosed all evidence favorable to the defendants.

At the trial on cross-examination Sanchez testified that he had interviewed the state's witnesses and that he had written his field notes on a manila pad which he had in his office. At that point counsel for the defendants asked the court for a short recess to allow Detective Sanchez to obtain his field notes. The prosecution objected to the request, taking the position that defense counsel were not entitled to examine the field notes. The trial court then asked Detective Sanchez whether he would mind getting the field notes. The witness replied that he had no objection. After some discussion, the trial court stated that it would not require Mr. Sanchez to go to this effort unless defense counsel had something specific in mind. At this point defense counsel pointed out the conflict in the testimony as to what the state's witnesses had told Detective Sanchez and argued that the officer's field notes could assist in the discovery of the truth. The trial court then denied defense counsels' request for the field notes. In further cross-examination Detective Sanchez testified that he had not disclosed on his final written report the name and address of a witness who had observed the robbery taking place from the adjoining premises. Sanchez's explanation was that the witness was a city employee who said he could not identify anybody and did not want to become involved. For that reason, Sanchez stated that he did not mention the witness in the final report given to the prosecution and to the attorneys for the defendants, although the name and address of the witness were included in his field notes. Neither the prosecutor nor defense counsel had notice of the undisclosed witness or of the detective's field notes until Detective Sanchez took the stand.

We have concluded that under the circumstances of this case the trial court committed reversible error in refusing to require Detective Sanchez to produce his field notes. In *State v. Humphrey*, 217 Kan. 352, 537 P.2d 155, we held that the discov-

ery provisions under the criminal code should be liberally construed and that the scope of discovery should be as full and complete as is reasonably possible under the circumstances. The state has an obligation to disclose evidence favorable to the defendant. *(United States v. Agurs,* 427 U.S. 97, 112, 49 L.Ed.2d 342, 96 S.Ct. 2392 [1976]; *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 [1963].) We have no way of knowing whether the testimony of the undisclosed witness who observed the robbery would have been favorable or unfavorable to the defendants. It cannot be denied, however, that Detective Sanchez, having the name and address of a witness to the robbery, was obligated to disclose to defense counsel the existence and identity of that witness. The fact that the prosecuting attorney had no knowledge of the witness is not controlling. The obligation of the state to disclose evidence to the defense extends to evidence in the possession of the police officers as well as to evidence in the files of the prosecutor. *(State v. Humphrey,* supra.)

After Detective Sanchez testified either at the preliminary hearing or at the trial, K.S.A. 22-3213 came into play and the defendants were entitled to the detective's report and field notes, if available.

In *State v. Stafford,* 213 Kan. 152, 515 P.2d 769, the court in syllabus 2 stated:

"A police officer called by the state to testify on direct examination as to facts revealed by his investigation of an alleged crime is a witness within the meaning of K.S.A. 1972 Supp. 22-3213 (2) and the defendant is entitled to the production of any statement or report made by the officer in the possession of the prosecution relating to the subject matter of the witness' testimony."

Another case in point is *State v. Mans,* 213 Kan. 36, 515 P.2d 810. *Mans* involved the "field notes" made by a police officer during the course of an investigation. The police officer was called to the stand and, following direct examination, defense counsel requested that he be allowed to examine these field notes prior to his cross-examination of the officer. The trial court denied his request to see the field notes. This was held to be error.

In the present case the refusal of the trial court to require production of Detective Sanchez's field notes cannot be considered as harmless error. At the time of the trial Detective Sanchez was testifying from his final written report prepared the day after

the robbery. The final report was based upon his scribbled field notes made on a yellow note pad the day before. Inconsistencies in his report had already appeared in the testimony at the time the existence of his field notes was discovered. There were inconsistencies in the testimony as to the height and weight of the robbers, as to the clothing worn by the robbers during the robbery, and as to the names of persons who had occupied an automobile which the state sought to connect with the robbers. In this case the field notes of Detective Sanchez would have been very helpful in assisting the jury in arriving at the truth and the production of the field notes might well have affected the verdict.

In view of the disposition of the two points discussed above, it is unnecessary to consider the other point raised on the appeal.

The judgment of the district court is reversed and the case is remanded to the district court with directions to grant the defendants a new trial.

FROMME, J., dissenting. In my opinion the errors complained of on appeal do not rise to the level of reversible error and this case should be affirmed. Appellant Johnson took the stand and testified he refused to waive his rights and to talk to Sanchez. When Detective Sanchez testified on direct examination that Johnson refused to sign a waiver of rights no contemporaneous objection was made. K.S.A. 60-404 provides no judgment shall be reversed by reason of erroneous admission of evidence unless there appears of record an objection to the evidence timely interposed and so stated as to make clear the specific ground of objection. The objection interposed by defense counsel was made later when six exhibits were offered by the state including the unsigned waiver form. The objection was:

"Your Honor, I think the refusal of my man to sign a waiver of rights is really immaterial. I don't believe it's competent or material and I am objecting to it."

The later objection during cross-examination of Johnson was sufficiently clear and should have been sustained but in view of what had gone before I do not feel it affected the outcome of the trial.

I consider the error in admission of this testimony cured by the subsequent instruction of the court that "no inference of guilt may be drawn from a defendant's failure to sign a waiver of rights form or give a statement to the police." In the absence of any

showing otherwise, we should assume the jury followed this instruction.

In the case of Taylor, he did sign the waiver of rights form and it was introduced. I see nothing wrong with the testimony of Sanchez when he said that after Taylor signed the form he was *very uncooperative*. Possibly Sanchez could have phrased this statement by saying Taylor signed the waiver and then refused to talk, but in either case the meaning was the same. Again there was no contemporaneous objection lodged to this statement and K.S.A. 60-404 should be honored.

As to the field notes I wish to point out that these were not known to the prosecutor and no bad faith is suggested. At most the only information available from the field notes which was not contained in the final report of the officer was the name of a witness who said he observed the robbers leaving the premises but could not identify anybody. The witness was not called or used by the state. The cases of *State v. Mans,* 213 Kan. 36, 515 P.2d 810, and *State v. Stafford,* 213 Kan. 152, 515 P.2d 769, cited by the majority, are readily distinguishable. The "field notes" in those cases were found to be necessary in the cross-examination of the officers concerning the subject matter of the officers' testimony on direct examination. Production under those circumstances is required by K.S.A. 22-3213 (2).

In our present case this statute is not applicable and to predicate reversible error on the failure of the state to disclose the name of a person who merely saw the robbers leave the building from a considerable distance places an impossible burden on the state. The person was known only to one investigative officer who did not consider the person had information material to either the prosecution or the defense. The state did not act in bad faith and in the absence of a request in advance of trial I do not believe this court should require the prosecution to disclose the names and addresses of such persons interviewed who are not to be called and have little or no material knowledge bearing on the crime charged.

I would affirm these convictions.

McFARLAND, J., joins in the foregoing dissenting opinion.