(829 P.2d 591)

No. 66,627

STATE OF KANSAS, *Appellee*, v. RUSSELL R. MAGGARD, *Appellant*.

Petition for review denied June 4, 1992.

Opinion filed April 3, 1992.

*Elizabeth Sterns,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for the appellant.

*Richard G. Guinn,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before BRISCOE, C.J., ELLIOTT and LEWIS, JJ.

LEWIS, J.: The defendant appeals his jury convictions of two counts of the crime of arson. As a result of the convictions, the defendant was sentenced to two consecutive terms of 5 to 10 years. This sentence was subsequently doubled under the Kansas Habitual Criminal Act to two consecutive terms of 10 to 20 years, for an effective sentence of 20 to 40 years.

The defendant was convicted of setting a fire in 1988 which damaged two homes in the Hawthorne subdivision of Overland Park. He was also convicted of setting a fire in the Westbury subdivision of Overland Park. The evidence indicates that a number of similarities existed between the fires in question. A similar liquid was used to start both fires, and the pouring of the liquid began in the doorways and had a similar pattern. Plastic jugs and tennis shoe prints were found at the scene of each fire.

The fires that the defendant was convicted of setting took place in February and June 1988. In April and July of that year, similar fires were set in Liberty, Missouri, and in Lawson, Missouri.

The defendant was arrested and charged with setting the fires in Kansas as a result of information provided to the authorities by Jesse Kirkland. According to Kirkland, he was with the defendant when the fires were set in Kansas and also at various sites in the State of Missouri. Kirkland insisted that he did not help set the fires but was afraid of the defendant and drove him to the fire scenes. While at the fire scenes, Kirkland advised that he witnessed the defendant set the fires in question. According to Kirkland, the defendant set the fires out of an intense hatred

for police. The defendant wore tennis shoes when he started the fires, but always threw away the pair he was wearing to confound the authorities should suspicion fall on him.

As a result of the information provided by Kirkland, the defendant was arrested and charged with arson in Johnson County. The defendant was convicted largely on the testimony of Kirkland and other witnesses who testified concerning fires allegedly set by the defendant in Kansas and Missouri.

The defendant raises a number of issues on appeal.

## SPEEDY TRIAL ISSUE

At the time the defendant was charged with setting fires in Johnson County, Kansas, he was in the Missouri State Penitentiary (MSP) as a result of parole violations on a previous sentence. He was also facing arson charges in Jackson County, Missouri.

While in the MSP, the defendant filed speedy trial requests under the Uniform Agreement on Detainers Act, K.S.A. 22-4401 *et seq.* These requests were filed simultaneously with Kansas and Missouri on November 30, 1989.

The record shows that the defendant's requests for a speedy trial were received in Kansas and Missouri on December 4, 1989. On December 28, 1989, Missouri had the defendant transported from MSP to the Jackson County jail to stand trial on pending arson charges. On January 18, 1990, Kansas attempted to transport the defendant from MSP to Kansas for trial on the instant charges. Kansas was advised that the defendant was not in MSP but was in the custody of the Missouri officials in Jackson County. On June 6, 1990, Jackson County returned the defendant to MSP. On June 11, 1990, Johnson County officials had the defendant transferred to Kansas to stand trial on the charges currently before this court.

During the preliminary hearing, the defendant moved for a dismissal of the charges on the grounds that Kansas had violated his speedy trial request. He argued that, pursuant to his speedy trial request, Kansas had 180 days from December 4, 1989, to place him on trial. Under this scenario, the defendant submits that the 180-day period expired on June 1, 1990, and that he was entitled to a dismissal of the charges against him. The trial court denied the motion. The defendant argues on appeal that

this was error and that Kansas violated his speedy trial rights under the Uniform Agreement on Detainers Act.

K.S.A. 22-4401, Article III(a) forms the basis of the defendant's argument and states:

"Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred and eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided,* That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner." (Emphasis added.)

We agree that more than 180 days elapsed from the date Kansas received the defendant's speedy trial request to the date it placed him on trial. During most of that time, he was in the custody of Missouri and unavailable to the Kansas authorities. This state of affairs was largely caused by the defendant having filed speedy trial requests with two separate jurisdictions on the same date. The question is whether he can take advantage of this situation and obtain dismissal of the Kansas charges because Kansas was unable to obtain custody of him within 180 days.

This is a question of first impression in this state. There are, however, decisions from other jurisdictions which hold that the defendant's argument is not tenable. We agree with those decisions.

In *State v. Binn*, 208 N.J. Super. 443, 506 A.2d 67 (1986), the New Jersey court dealt with a claim identical to the one now before this court. In that case, the defendant was facing charges in several states and filed detainer requests in all of those states on the same day. At the time the State of New Jersey obtained custody of the defendant, the 180 days had run, and the defendant

argued that his speedy trial rights had been violated. The New Jersey court rejected this argument, holding:

"It can hardly be suggested that a defendant can request speedy trial in various jurisdictions simultaneously and then complain that his Sixth Amendment rights are violated by the absence of contemporaneous dispositions. *Cf. e.g., Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). Moreover, while a prisoner's right to a speedy trial in another jurisdiction is not measured exclusively by the Interstate Agreement on Detainers, [citations omitted] he could not expect contemporaneous dispositions of various charges by simultaneous applications under Article III of the Interstate Agreement. [Citations omitted.] Similarly, a defendant should not be able to evade or delay pending prosecution or proceedings in one state by seeking disposition in another jurisdiction under the Interstate Agreement on Detainers. [Citation omitted.] In any event, the pending proceedings in the 'sending state' can be the basis for a continuance or a tolling of the 180 day requirement under Article III; and the continuance, tolling or enlargement of that time period under Article III can only occur 'in open court, the prisoner or his counsel being present. . . . Citations omitted.] Hence, since the defendant was not represented in these proceedings before his return to New Jersey, the issue of tolling or enlargement could not have been decided until after defendant was returned here, even though it was more than 180 days after delivery and receipt of the request for final disposition. [Citations omitted.]" 208 N.J. Super. at 449.

In *United States v. Mason,* 372 F. Supp. 651 (N.D. Ohio 1973), the court dealt with a situation where the defendant, while doing time in Ohio, gave the federal government notice on a detainer. Before the government was able to obtain custody, defendant was transferred to another state to stand trial. The court rejected the defendant's speedy trial argument, saying:

"Initially the Court agrees with the Government that the time period must be tolled while the defendant was standing trial in Michigan. [Citation omitted.] This appears to be the only logical result, since if a person is standing trial in one state he cannot be expected to be standing trial in another state simultaneously. Therefore, the Court finds that the time was tolled for 148 days from September 11, 1972 to February 6, 1973, in that the defendant was unable to stand trial in this Court." 372 F. Supp. at 653.

In *People v. Garner,* 224 Cal. App. 3d 1363, 1372, 274 Cal. Rptr. 298 (1990), the California court, on a similar contention, held:

"Garner is correct in his position that a prisoner is entitled to simultaneously request speedy dispositions in more than one jurisdiction and that the time limitations are tolled while the prisoner is facing trial in another

jurisdiction because the prisoner is unavailable for transfer to another jurisdiction while on trial. [Citation omitted.]"

We adopt the philosophy of the cases cited above. By requesting a speedy trial simultaneously in more than one jurisdiction, a defendant will generally render it impossible for more than one state to bring him to trial within the 180-day time period. In the case now before this court, the Kansas authorities responded to the defendant's request in a timely fashion. However, initially, the defendant was unavailable because he was in Jackson County as a result of the speedy trial request he had filed in that jurisdiction. In essence, the defendant, by his own maneuvers, made it impossible for Kansas to put him on trial within 180 days of his speedy trial request. If we adopted the defendant's argument, he would have disposed of the Kansas charges by the simple act of requesting speedy trials in two different states at the same time. This would be an illogical result and would permit a defendant to manipulate the Uniform Agreement on Detainers Act under circumstances never intended. While a defendant has every right to demand a speedy trial on charges lodged against him, he should not be allowed to manipulate the Act and gain dismissal of charges under circumstances where the delay is the result of his own request.

We hold in this case that the speedy trial time period was tolled during the period of time the defendant was in the custody of Jackson County authorities, awaiting trial on charges in that county. This time period would begin to run again when the defendant was returned to MSP on June 6, 1990, and Kansas would have 180 days from that date to place him on trial. The record shows that the defendant was placed on trial well within 180 days of June 6, 1990, and that the trial court did not err in refusing to dismiss the charges.

We are aware that the trial court in this case held that, by requesting simultaneous speedy trials in two states on the same day, the defendant waived his right to a speedy trial under the Act. We think the term "waiver" was misused. While there was no waiver by the defendant of any rights, there was a tolling of the 180-day time frame when Missouri acted on his speedy trial request and he became unavailable to Kansas. Whether it is called "waiver" or "tolling," the result is the same. The trial court's

action was correct, even though it may have been for the wrong reason. See *State v. Shehan,* 242 Kan. 127, 131, 744 P.2d 824 (1987).

The defendant argues that, since the State of Kansas failed to move for a continuance or failed to raise the tolling issue prior to the running of the 180-day time period, it is barred from doing so. We have examined the record, and this argument was not presented to the trial court. It is well settled that the defendant cannot raise points on appeal which were not presented to the trial court. *State v. Holley,* 238 Kan. 501, 508, 712 P.2d 1214 (1986). It does not appear to us that the defendant has preserved this issue for appeal.

Even assuming this issue was preserved for appeal, it is without merit. As pointed out by *State v. Binn,* the issue of a continuance under the Act can only be raised in open court with the prisoner or his counsel present. It was not possible for Kansas to raise the issue of a continuance or the tolling issue during the period of time the defendant was in the custody of Missouri. We consider the arguments made by the State of Kansas at the defendant's preliminary hearing to be the equivalent of raising the issue of a continuance or the issue of the tolling of the statute. This was done at the earliest possible opportunity, and we hold that Kansas did not forfeit the right to raise this issue by failing to do so during the original 180-day period since the defendant was not available in open court.

The defendant also argues that the Kansas detainer should have been disposed of first since it was an interstate request. We consider this issue to be without merit. It is not possible for us to consider this argument in a vacuum. By the time Kansas responded to the defendant's request, he was already transferred from MSP to the county jail in Jackson County. We have already established that, while the defendant was being held for trial by Missouri, he was not available to the State of Kansas. At this point, we cannot discern when, where, or how the issue of priority between Kansas and Missouri could have been decided. Missouri had custody of the defendant and was preparing to put him on trial. Any issue of priority between the two states is moot at this point.

We dispose of this issue by holding that the 180-day time period was tolled during the time the defendant was in the custody of Missouri. This result and our analysis in reaching it is analogous to the decisions concerning the Kansas speedy trial statute, K.S.A. 22-3402. According to that statute, if a delay in the speedy trial period is a result of the defendant's actions, then the delay is chargeable to the defendant, and the length and time of the delay is not counted in calculating when the time period has run. See *State v. Prewett*, 246 Kan. 39, 42, 785 P.2d 956 (1990); *State v. Bean*, 236 Kan. 389, Syl. ¶ 2, 691 P.2d 30 (1984); *State v. McQuillen*, 236 Kan. 161, Syl. ¶ 2, 689 P.2d 822 (1984); K.S.A. 22-3402.

Based on these Kansas cases, the reason for the delay was the defendant's request that Missouri place him on trial. As a result, the defendant should be held accountable for the delay and the disposition of the Johnson County charges.

## K.S.A. 60-455 ISSUE

At the defendant's trial, six witnesses were called by the State of Kansas whose testimony concerned fires that were set by the defendant in the State of Missouri. The defendant objected to the admission of testimony of prior crimes. The defendant contends that the State's calling witnesses to testify about the Missouri fires violated K.S.A. 60-455 because their testimony failed to meet the three-prong test for admitting evidence concerning the commission of prior crimes or civil wrongs.

In determining if the trial court erred in admitting evidence in violation of K.S.A. 60-455, the standard of review is abuse of discretion:

"A ruling on the admissibility of other crimes evidence pursuant to K.S.A. 60-455 is within the discretion of the trial court. The trial court's ruling will not be interfered with on review unless that discretion was abused or unless the trial judge admitted evidence that clearly had no bearing on any of the issues." *State v. Searles*, 246 Kan. 567, Syl. ¶ 2, 793 P.2d 724 (1990).

Discretion is abused when no reasonable person would adopt the position of the trial court. *State v. Wagner*, 248 Kan. 240, 242, 807 P.2d 139 (1991).

K.S.A. 60-455 prohibits the admission of evidence that a person committed a crime or civil wrong on a specified occasion for the

purpose of proving that he committed another crime or civil wrong on another occasion. However, that statute does permit the admission of such evidence when relevant "to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

In applying K.S.A. 60-455, a three-prong test has been developed. This test was first developed in *State v. Bly*, 215 Kan. 168, 523 P.2d 397 (1974). In that case, the court held that, to admit evidence under K.S.A. 60-455, the trial court must find that the evidence being offered is (1) relevant to prove one of the facts specified in the statute; (2) that the fact is a disputed, material fact; and (3) balance the probative value of the prior crime or civil wrong evidence against its tendency to prejudice the jury. 215 Kan. at 175-76. This test has become the rule with regard to K.S.A. 60-455 evidence. See *State v. Searles*, 246 Kan. at 577; *State v. Graham*, 244 Kan. 194, 196, 768 P.2d 259 (1989); *State v. Clements*, 241 Kan. 77, 84, 734 P.2d 1096 (1987); *State v. Breazeale*, 238 Kan. 714, Syl. ¶ 1, 714 P.2d 1356 (1986).

We have examined the record in this case and have applied the three prongs of the test cited above. In doing so, we conclude that the trial court did not abuse its discretion in permitting the State's witnesses to testify about the Missouri fires and in admitting other evidence of those fires. In this case, the stated reason for use of the evidence of Missouri fires was to prove identity. In *State v. Bly*, the court set out specific requirements that must be met to prove identity:

"Where a similar offense is offered for the purpose of proving *identity*, the evidence should disclose sufficient facts and circumstances of the other offense to raise a reasonable inference that the defendant committed both of the offenses. In other words to show that the same person committed two offenses it is not sufficient simply to show that the offenses were violations of the same or a similar statute. There should be some evidence of the underlying facts showing the manner in which the other offense was committed so as to raise a reasonable inference that the same person committed both offenses. As pointed out by Mr. Justice Kaul in *State v. Johnson*, 210 Kan. 288, 502 P.2d 802:

' "The quality of sameness *is* important when pondering the admission of other crimes to prove identity." ' (p. 294) (Emphasis supplied.)" 215 Kan. at 177.

In the instant matter, the evidence presented by the State complies with the requirements of *Bly* and similar cases. The evidence is relevant because identity of the defendant was an element of proving he committed the crimes. The defendant pled not guilty to the charges, which placed in issue all disputed material facts, including his identity. Due to the defendant's plea of not guilty, the State was required to prove that it was the defendant who set the fires in question.

The evidence introduced to prove identity meets the test for sameness. In the instant matter, the fire in the Camelot subdivision in Missouri was nearly identical to the fires in Kansas. The structures set fire to were homes under construction. The fires were all set in the early morning hours and were all started with a flammable liquid that was poured inside the front door on the first floor and splashed onto the walls. In both cases, the flammable liquid was carried in plastic jugs, and tennis shoe prints were found in the area. The fire in Missouri at Shepherd's Implement Co. was different only to the extent that Shepherd's was not a home under construction. Otherwise, the pattern of the fire at Shepherd's was the same as the fires in Kansas and at the Camelot subdivision in Missouri.

Finally, we conclude that the probative value of the evidence outweighs the prejudice. Although we agree there is some prejudice to a defendant under these circumstances, some prejudice is inherent in the proper admission of prior crimes. However, we cannot say that the evidence was so prejudicial as to outweigh its probative value.

The defendant argues that there were so many witnesses testifying about the two fires in Missouri that the evidence was cumulative and became prejudicial. In *State v. Breazeale* and *State v. Searles*, our Supreme Court held that, as long as the evidence went to the material issue in dispute, the fact that it was cumulative was not significant. *State v. Searles*, 246 Kan. at 579; *State v. Breazeale*, 238 Kan. at 723.

## ABSENCE OF K.S.A. 60-455 HEARING

In connection with the argument made above, the defendant contends that the trial court erred in admitting the 60-455 evi-

dence without holding a hearing prior to trial out of the presence of the jury.

The defendant is correct in arguing that a pretrial hearing of some sort is required to determine the admissibility of evidence under K.S.A. 60-455. *State v. Breazeale*, 238 Kan. at 723; *State v. Bly*, 215 Kan. at 176. However, under the circumstances of the instant matter, the argument of the defendant is not grounds for reversal.

In this case, there was a preliminary hearing in which the judge heard arguments on the admissibility of the evidence outside of the presence of a jury. The judge admitted the evidence at the preliminary hearing. At the trial, although the trial judge was not the same, the trial judge was familiar with the motion and the testimony to be presented and based his rule as to admissibility on the ruling at the preliminary hearing.

Even if we were to assume that the trial court erred in not holding an independent hearing, we conclude any such error was harmless. K.S.A. 60-261 states that erroneous admissions of evidence will not be grounds for reversal if the error was harmless. An error is considered harmless if it does not affirmatively appear to have prejudicially affected the substantial rights of the defendant. *State v. Bell*, 239 Kan. 229, 235, 718 P.2d 628 (1986). In the instant matter, we have already determined that the evidence was properly admitted. As a result, any error in not holding a pretrial hearing is, at best, harmless.

## APPLICATION OF HABITUAL CRIMINAL ACT

Finally, the defendant argues that the evidence submitted by the State of Kansas was not sufficient to justify the imposition of the Kansas Habitual Criminal Act. On this issue, we agree with the defendant's contentions.

Generally, proof of prior felony convictions to invoke the Habitual Criminal Act is made by using certified or authenticated copies of the journal entries of convictions from other states or counties. This is the best possible evidence of a prior felony conviction and would include all of the necessary facts required to be shown by K.S.A. 22-3426. In this case, evidence of that kind was not used. In attempting to prove the defendant's prior criminal convictions, the State utilized the following evidence: (1)

The testimony of the writer of the presentence investigation report, who testified that the defendant told her he had been incarcerated in the State of Missouri for approximately 23 years; (2) the testimony of a deputy sheriff of Johnson County, who testified that he picked up the defendant at the MSP; and (3) a certified document from the Missouri Department of Corrections and Human Resources showing the bare bones of the defendant's convictions in the State of Missouri. This document might be better described as a Missouri "rap sheet," showing the defendant's criminal activity in that state.

We have reviewed the evidence submitted and find it lacking in several respects. It is lacking in facts and details, which we should expect to be present in evidence that is used to double a defendant's sentence from 10 to 20 years to 20 to 40 years.

In Kansas, the statute in question merely requires competent evidence of the prior convictions. *State v. Crispin*, 234 Kan. 104, 671 P.2d 502 (1983); *State v. Crichton*, 13 Kan. App. 2d 213, 766 P.2d 832 (1988), *rev. denied* 244 Kan. 739 (1989). This court has specifically held that information provided to the presentence investigation report writer is not sufficient competent evidence to justify the imposition of the Habitual Criminal Act:

"The record in this case discloses that the State had not been able to obtain documentary evidence of a prior federal felony conviction for interstate transportation of forged securities at the time of sentencing. The trial court did not want to grant a continuance. Therefore, the State put Mr. Witham, the presentence investigator assigned to this case, on the stand to testify regarding the defendant's previous felony convictions. He testified to the effect that defendant admitted to 7 or 8 prior convictions, including the federal felony for forged securities which the State had given defendant notice it would use to impose the Habitual Criminal Act. There was no evidence to confirm this testimony nor was there any showing that the defendant had been represented by counsel at the time of the federal conviction.

. . . .

"However, we are constrained to hold that Mr. Witham's testimony did not constitute sufficient competent evidence under K.S.A. 1984 Supp. 21-4504(e) and the authorities cited above. A presentence investigation report is prepared to help the trial judge determine an appropriate sentence. It is not prepared to discover prior convictions for enhancement purposes. Here, neither the defendant nor his counsel admitted *in court* to any prior felony convictions. It should also be noted that there was no evidence of any kind produced to corroborate the statement made to the court services

office and there was no affirmative showing that defendant had been represented by counsel at the time of the claimed felony conviction as is required by *State v. Duke*, 205 Kan. 37, Syl. ¶ 3." *State v. Hicks*, 11 Kan. App. 2d 76, 87-89, 714 P.2d 105 (1986).

Accordingly, the testimony of the writer of the presentence investigation report in this case was not sufficient competent evidence to prove that the defendant had been convicted of a prior felony.

The certified rap sheet from the State of Missouri does show that the defendant was convicted of first-degree murder on January 4, 1969, in Barr County, Missouri. It shows nothing more about that conviction. In *State v. Duke*, 205 Kan. 37, 468 P.2d 132 (1970), the Supreme Court held, at Syl. ¶ 3:

"A record of prior felony conviction which is silent or ambiguous concerning the presence of counsel or the valid waiver thereof is presumptively void, and it alone cannot form the basis for establishing a valid conviction as an element of K.S.A. 21-2611 or for imposing enhanced punishment under the habitual criminal act (K.S.A. 21-107a)."

We have reviewed the evidence submitted by the State of Kansas to impose the Habitual Criminal Act. There is nothing in the evidence submitted concerning the presence of counsel or the valid waiver of counsel by the defendant. As established by *State v. Duke*, cited above, the conviction as shown by the evidence is presumptively void. As a result, on the basis of *State v. Duke*, the evidence is insufficient for imposing enhanced punishment under the Habitual Criminal Act. As a result, we reverse and remand this case for resentencing of the defendant.

We point out that K.S.A. 22-3426 provides as follows:

"(d) If the sentence is increased because defendant previously has been convicted of one or more felonies *the record shall contain a statement of each of such previous convictions, showing the date, in what court, of what crime and a brief statement of the evidence relied upon by the court in finding such previous convictions. Defendant shall not be required to furnish such evidence.*" (Emphasis added.)

In this case, the journal entry reflecting the sentencing of the defendant under the Habitual Criminal Act does not contain the information required by K.S.A. 22-3426. On remand, if the defendant is resentenced under the Habitual Criminal Act, the

journal entry of resentencing shall set forth the information required by K.S.A. 22-3426.

The defendant's sentence under the Habitual Criminal Act is vacated, and the matter is remanded for resentencing of the defendant consistent with this opinion.

Affirmed in part, reversed in part, and remanded.