NOT DESIGNATED FOR PUBLICATION

No. 122,836

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY A. DILLARD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Miami District Court; AMY L. HARTH, judge. Opinion filed July 16, 2021.
Reversed and remanded with directions.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Jason A. Vigil*, assistant county attorney, *Elizabeth H. Sweeney-Reeder*, county attorney, and
*Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., WARNER and HURST, JJ.

PER CURIAM: Anthony A. Dillard appeals the district court's revocation of his
probation. Dillard claims the district court lacked jurisdiction to revoke his probation
because he did not receive a probation revocation hearing until more than 180 days after
he filed a request for final disposition under the Mandatory Disposition of Detainers Act
(MDDA), K.S.A. 22-4301 et seq. We agree with Dillard's claim. As a result, we reverse
the district court's revocation of Dillard's probation for lack of jurisdiction and remand
with directions for the district court to dismiss the motion to revoke probation.

1

In 2016, Dillard pled guilty to possession of methamphetamine in Miami County District Court. The district court sentenced Dillard to 20 months' imprisonment but granted probation for 18 months. Dillard performed poorly on probation. The State filed at least four motions to revoke his probation, each alleging various violations. Despite the many violations, the district court continued to place Dillard back on probation.

On July 13, 2018, the State filed another motion to revoke Dillard's probation. The motion alleged that Dillard violated his probation by failing to report to an inpatient treatment facility on June 28, 2018. The district court issued a bench warrant on July 16, 2018, but the record does not reflect when this bench warrant was served.

Later in 2018, Dillard pled guilty in a Johnson County criminal case. The Johnson County District Court sentenced Dillard to 62 months' imprisonment and remanded him to the custody of the Kansas Department of Corrections (KDOC). On February 11, 2019, Dillard filed a postsentence motion to withdraw plea in the Johnson County case.

Then, on March 4, 2019, Dillard signed an application under the MDDA for final disposition of the motion to revoke probation, and the Miami County District Court received the request on March 11, 2019. On March 18, Miami County issued a transport order for Dillard. But Miami County later learned that on March 19, 2018—before KDOC received Miami County's transport order—Dillard had been transported from the El Dorado Correctional Facility (EDCF) to the Johnson County Jail for his motion to withdraw plea. Dillard remained at the Johnson County Jail until the district court denied his motion. On September 17, 2019, Dillard was transported back to EDCF.

On September 20, 2019, KDOC sent Miami County District Court a letter informing the court that more than 180 days had passed since the date of Dillard's MDDA

application. On October 9, 2019, Dillard filed a pro se motion to dismiss under the MDDA. The State responded and asked the district court to deny Dillard's motion.

Dillard appeared with counsel at a status hearing on November 14, 2019. At a hearing on November 27, 2019, counsel argued the substance of the Dillard's motion to dismiss and the State's response. The parties submitted additional briefing. At a hearing on February 27, 2020, the district court denied Dillard's motion to dismiss, finding that by filing the motion to withdraw plea in the Johnson County case, Dillard caused a delay in resolving the motion to revoke probation. The district court found that ruling any other way would allow manipulation of the MDDA not contemplated by the statute. The district court then revoked Dillard's probation and ordered him to serve the original sentence. Dillard timely appealed the district court's judgment.

DID THE DISTRICT COURT ERR IN DENYING DILLARD'S MOTION TO DISMISS?

On appeal, Dillard claims the district court erred in denying his motion to dismiss. For a remedy, Dillard asks this court to "reverse the district court's decision, vacate [his] sentence, and remand this case to the district court with directions that Dillard be discharged." Before we address the parties' specific arguments, we will begin this opinion by presenting an overview of the MDDA and discussing recent amendments to the Act.

The MDDA's "aim is to prevent indefinite suspension of pending criminal charges while a prisoner is incarcerated on other charges, and it seeks to prevent delays in the administration of justice by placing an obligation on the courts to hear cases within a reasonable amount of time." *State v. Burnett*, 297 Kan. 447, 453, 301 P.3d 698 (2013). Under K.S.A. 2020 Supp. 22-4301(a): "Any inmate in the custody of the secretary of corrections may request final disposition of any . . . motion to revoke probation . . . pending against such person in this state." "Following the receipt of the certificate by the court and county attorney from the secretary of corrections . . . the motion to revoke

3

probation shall be brought for a hearing . . . within 180 days." K.S.A. 2020 Supp. 22-4303(b)(1)(A). The 180-day limit is tolled when: (1) the court grants extra time for good cause shown in open court, (2) a continuance or delay has been requested or agreed to by the inmate or the inmate's attorney, or (3) there is a pending motion to determine competency. K.S.A. 2020 Supp. 22-4303(b). If the motion to revoke probation is not brought for a hearing within the time limit, then the district court no longer has jurisdiction over the motion to revoke probation and the motion will be of no further force or effect and must be dismissed with prejudice. K.S.A. 2020 Supp. 22-4303(b)(4).

Here, neither side contests that Dillard filed a proper MDDA request, which the district court received on March 11, 2019. Instead, the issue is what effect Dillard's filing of the motion to withdraw plea in the unrelated Johnson County case had on the time limit in this case. Dillard did not receive a hearing on the motion to revoke probation until November 14, 2019. If the time Dillard spent in the Johnson County Jail on his motion to withdraw plea—from March 19, 2019, to September 17, 2019—did not toll the time limit, then Dillard did not receive a hearing within the 180-day limit. But if the time spent in the Johnson County Jail is not counted, then only 66 days had passed before he received a hearing on his probation violation, well within the 180-day limit. The district court found that Dillard's motion to withdraw plea caused a delay in resolving the motion to revoke probation and thus that time did not count against the 180-day deadline.

Dillard's argument on appeal is straightforward. He asserts that under the statute there are only three ways to toll the 180-day limit and none of them occurred here. More specifically, Dillard asserts that he never requested or agreed to a continuance or delay *in the Miami County case*. Dillard asserts that the State should have contacted Johnson County and "worked out" transportation because Dillard was still in KDOC custody when he was transferred to Johnson County.

4

The State's argument is more complicated. Before addressing whether the time spent in the Johnson County Jail could be considered a delay requested or agreed to by Dillard in disposing the motion to revoke probation, the State offers two other arguments on the application of the MDDA and recent amendments to the law. To better understand the State's arguments, it helps to briefly outline and discuss relevant provisions of the predecessor uniform act on detainers, a 2013 Kansas Supreme Court decision addressing time limitations under the prior law, and recent statutory amendments to the law.

Before 2016, the Uniform Mandatory Disposition of Detainers Act (UMDDA), predecessor to the current MDDA, stated in relevant part:

"(a) Any person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried indictment, information, motion to revoke probation or complaint pending against such person in this state. The request shall be in writing addressed to the court in which the indictment, information, motion to revoke probation or complaint is pending and to the county attorney charged with the duty of prosecuting it, and shall set forth the place of imprisonment.

"(b) The warden, superintendent or other official having custody of prisoners shall promptly inform each prisoner in writing of the source and nature of any untried indictment, information, motion to revoke probation or complaint against such prisoner of which the warden, superintendent or other official has knowledge or notice, and of such prisoner's right to make a request for final disposition thereof." K.S.A. 2015 Supp. 22-4301.

The time limit, contained in K.S.A. 2015 Supp. 22-4303, stated that the 180-day limit begins to run after receipt of the request unless the court grants additional time for good cause shown in open court, the parties stipulate to a continuance, or a continuance is granted after notice and opportunity to be heard.

In 2013, our Supreme Court decided *Burnett*, 297 Kan. 447. In 2006, Burnett was charged with an aggravated weapons violation and other crimes in a Reno County

5

criminal case. A few months later, he was convicted and sentenced to prison in a separate McPherson County case. Burnett began serving his sentence but remained in the McPherson County Jail on a second McPherson County case. While there, Burnett filed a request for disposition under the UMDDA in the Reno County case. Burnett did not receive a hearing in his Reno County case for more than 180 days after he filed his request for disposition, so he moved to dismiss. The district court denied Burnett's motion, finding he was not in KDOC custody when he filed his request. Burnett was later convicted of the aggravated weapons violation and was sentenced to 17 months in prison.

On appeal, our Supreme Court reversed the district court's judgment and found the district court lacked jurisdiction to convict and sentence Burnett for the crime. 297 Kan. at 459. The court found that "while Burnett was physically located in the McPherson County Jail, he was also in KDOC custody" based on the order imposing his prison sentence in the first McPherson County case. 297 Kan. at 456. The court then found that he was imprisoned in a penal institution, properly invoked the UMDDA, and was not brought to final disposition on time. 297 Kan. at 458-59.

In 2016, the Kansas Legislature amended the statute to its current version. It changed the citation of the Act from the UMDDA to the MDDA. See K.S.A. 2020 Supp. 22-4308. It also changed who may file a request for final disposition from "[a]ny person who is imprisoned in a penal or correctional institution" to "[a]ny inmate in the custody of the secretary of corrections." Compare K.S.A. 2015 Supp. 22-4301(a) with K.S.A. 2020 Supp. 22-4301(a). It removed language referring to "the warden, superintendent or other official having custody of prisoners" and replaced it with "the secretary." Compare K.S.A. 2015 Supp. 22-4301(b) with K.S.A. 2020 Supp. 22-4301. It added language on how multiple detainers should be handled. K.S.A. 2020 Supp. 22-4303(b)(1)(B). It also enumerated the three ways in which the statute could be tolled: (1) the court grants extra time for good cause shown in open court, (2) a continuance or delay has been requested

or agreed to by the inmate or the inmate's attorney, or (3) there is a pending motion to determine competency. K.S.A. 2020 Supp. 22-4303(b).

The State's first two arguments focus on the 2016 amendments. The State argues that the Legislature amended the UMDDA in response to *Burnett* and that the MDDA now only applies to inmates in the physical custody of KDOC, not those in county jail. Alternatively, the State argues that Dillard's motion to withdraw plea in the Johnson County case was the functional equivalent of a detainer and, thus, the MDDA's new provision on disposition of multiple detainers would apply. Finally, the State argues that the time Dillard spent in the Johnson County Jail was a delay caused by him and should not count against the 180-day limit to receive a hearing on the probation violation.

Whether a defendant's statutory right to a speedy hearing under the MDDA is violated is a question of law subject to de novo review. Similarly, resolution of this issue involves statutory interpretation of the MDDA and a determination of jurisdiction, which are also subject to unlimited review. *Burnett*, 297 Kan. at 451.

This court's analytical framework for statutory construction is well known:

> "'[W]e first attempt to give effect to the intent of the legislature as expressed through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to express language, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. Stated yet another way, a clear and unambiguous statute must be given effect as written. If a statute is clear and unambiguous, then there is no need to resort to statutory construction or employ any of the canons that support such construction.'" *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019).

7

*Does the MDDA apply to KDOC inmates who have been transferred to a county jail?*

The State first argues that the 2016 amendments were in response to *Burnett* and "demonstrate a clear legislative intent that the 180-day time to bring the matter for hearing only applies in situations where the secretary of corrections has physical custody of the inmate making the request." The essence of the State's argument is that the 180-day limit in the MDDA automatically tolls when an inmate has been transferred to a county jail and is no longer in the "physical custody" of the KDOC. The State points to the amendments and a supplemental note to the bill and testimony before the Senate Committee by a representative from the Kansas County and District Attorneys Association. But the State's argument disregards the plain language of the MDDA and asks this court to read an additional way to toll the statutory time limit.

We agree with the State that the 2016 amendments to the MDDA were in response to *Burnett*, but the effect of the amendments was to bring the Act into compliance with *Burnett* and not to overrule the decision. *Burnett* held that an inmate physically in a county jail was still in KDOC custody for purposes of the UMDDA. 297 Kan. at 456. Following *Burnett*, the 2016 amendments *broadened* who may file a request for final disposition from "[a]ny person who is imprisoned in a penal or correctional institution" to "[a]ny inmate in the custody of the secretary of corrections." Compare K.S.A. 2015 Supp. 22-4301(a) with K.S.A. 2020 Supp. 22-4301(a).

In Dillard's case, the Johnson County District Court remanded him to the custody of the KDOC to serve his sentence in that case, and Dillard remained in KDOC's custody after he was temporarily transported to the Johnson County Jail for his motion to withdraw plea. The 2016 amendments did not include a new definition of custody or add the qualifier of "physical" to the provision that states "[a]ny inmate in the custody of the secretary of corrections" may file a request for final disposition under the MDDA. Thus,

8

the amendments do not overrule *Burnett* to the extent that the decision held an inmate could be in KDOC custody while physically being in a county jail.

The State's argument that the MDDA does not apply to inmates who have been transferred to a county jail would require this court to read a fourth and implicit way to toll the 180-day time limit into the statute. When the statute is clear and unambiguous, this court will not speculate on legislative intent or read a statute to add something not readily found in the statute. *Ayers*, 309 Kan. at 163-64. The MDDA simply requires the inmate to be in KDOC custody when the inmate files a request for final disposition. Dillard was in KDOC custody when he filed his request. There is no language in the statute that support's the State's assertion that "physical custody is key" to the running of the statutory time limit, and there is no language that supports a finding that an inmate's transfer to a county jail on other matters removes the inmate from KDOC custody.

*Is Dillard's motion to withdraw plea the functional equivalent of a detainer requiring application of the provisions regarding multiple detainers?*

The State next argues that this court should construe Dillard's motion to withdraw plea in the Johnson County case as the functional equivalent of a detainer "because his motion to withdraw plea required action in Johnson County and was outside the control of Miami County." The State asserts the 2016 amendments were specifically enacted to rectify requiring the State to transport a defendant from one place to another when it had no authority to do so. Under the amendments, "if the inmate has *detainers from multiple jurisdictions*, the final detainer shall be brought within 180 days and each subsequent detainer shall be brought within 180 days after return of the inmate to the secretary." (Emphasis added.) K.S.A. 2020 Supp. 22-4303(b)(1)(B). If the State's argument is correct, Miami County would have 180 days to bring Dillard to a hearing on the motion to revoke probation after he was returned to KDOC on the Johnson County "detainer."

9

Dillard argues that K.S.A. 2020 Supp. 22-4303(b)(1)(B) does not apply because Dillard only had one detainer—the detainer from Miami County. Dillard asserts the State provides no authority for construing a motion to withdraw plea as the functional equivalent of a detainer. Dillard also asserts he had no power to place a detainer on himself or file a transport order to decide where he goes.

The State's argument fails. The MDDA does not define the word "detainer." But not only is there no statutory authority to support the State's argument, Dillard's motion to withdraw plea cannot possibly be the functional equivalent of a detainer because such a motion is outside the scope and purpose of the MDDA. The MDDA provides an inmate with the ability to request disposition of any "*untried* indictment, information, motion to revoke probation or complaint pending against such person in this state." (Emphasis added.) K.S.A. 2020 Supp. 22-4301(a). Further, a case is only dismissed under the MDDA "if the indictment, information or complaint is not brought to trial within the time period specified in this subsection, or the motion to revoke probation is not brought for a hearing." K.S.A. 2020 Supp. 22-4303. The provisions focus on ensuring the inmate gets a timely determination of guilt or innocence either on new charges or an alleged probation violation. See also *Burnett*, 297 Kan. at 453 (stating the UMDDA's "aim is to prevent indefinite suspension of pending criminal charges while a prisoner is incarcerated on other charges, and it seeks to prevent delays in the administration of justice by placing an obligation on the courts to hear cases within a reasonable amount of time").

There is no provision in the MDDA addressing or discussing an inmate's motion to withdraw plea. If Dillard's motion to withdraw plea were considered the functional equivalent of a detainer, it would broaden the scope of the MDDA and allow an inmate to demand disposition of such a motion under the MDDA. Thus, Dillard's motion to withdraw plea cannot be considered the functional equivalent of a detainer.

10

*Did Dillard's motion to withdraw plea in the Johnson County case amount to a delay requested or agreed to by Dillard in disposing the motion to revoke probation?*

Dillard argues that the district court erred in finding his motion to withdraw plea in the Johnson County case tolled the time limit to dispose of the motion to revoke probation. He asserts that there are only three ways to toll the statute and none of them occurred here. To reiterate, once an inmate has invoked the MDDA, the State must have a hearing on the motion to revoke probation within 180 days unless: (1) the court grants extra time for good cause shown in open court, (2) a continuance or delay has been requested or agreed to by the inmate or the inmate's attorney, or (3) there is a pending motion to determine competency. K.S.A. 2020 Supp. 22-4303(b).

Neither party contends that the court granted additional time for good cause shown in open court or that there was a pending motion to determine competency. Instead, the parties contest whether Dillard's motion to withdraw plea in the Johnson County case amounted to a delay "requested or agreed to" by Dillard in disposing the Miami County motion to revoke probation. See K.S.A. 2020 Supp. 22-4303(b)(2). Dillard argues that the statute's reference to a delay applies only when the inmate requests or causes a delay in the case in which the detainer is filed. The State argues that Dillard caused the delay in resolving the motion to revoke probation by filing the motion to withdraw plea in Johnson County, so the time he spent in the Johnson County Jail does not count against the time limit for the probation revocation. The district court agreed with the State.

The State argues that to rule differently from the district court "would allow similarly situated defendants to avoid prosecution by manipulating the MDDA." The State cites *State v. Maggard*, 16 Kan. App. 2d 743, 829 P.2d 591 (1992), to support its argument. In that case, Maggard was charged with crimes in a Johnson County case while he was currently serving a prison sentence in Missouri. He was also facing new charges in Jackson County, Missouri. Maggard filed speedy trial requests under the Uniform

11

Agreement on Detainers Act (UADA), K.S.A. 22-4401 et seq., in both the Jackson County and the Johnson County cases. Maggard was first transported to Jackson County. Johnson County tried to transport Maggard from the prison in Missouri and was informed that he was in Jackson County. Six months later, after Maggard stood trial in Jackson County, he was transported to Kansas. He moved for dismissal arguing Kansas exceeded the 180-day limit. The district court denied his motion.

On appeal, this court affirmed the district court's finding that by requesting a speedy trial simultaneously in more than one jurisdiction, Maggard made himself unavailable to the Kansas court and, thus, tolled the time limit. 16 Kan. App. 2d at 748. The court reasoned that to rule otherwise would be "illogical" and allow a defendant to "manipulate" the UADA. 16 Kan. App. 2d at 748.

Dillard correctly argues that *Maggard* is distinguishable. First, *Maggard* is a case under the UADA, not the MDDA. Second, Maggard had two detainers and filed a request on each of them. Dillard only had one detainer and only filed a request under the MDDA in the detainer case. Third, the 2016 amendments to the MDDA address the situation in *Maggard*. Under K.S.A. 2020 Supp. 22-4303(b)(1)(B), the MDDA explains the process for when an inmate files a request for disposition on more than one detainer. Also, the UADA now contains an explicit provision tolling the time "for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." K.S.A. 22-4401. Thus, *Maggard* is not particularly authoritative to the issue at hand.

In deciding this appeal, we must conform our analysis to the language of the MDDA. Under K.S.A. 2020 Supp. 22-4303(b)(2), did Dillard's motion to withdraw plea in the Johnson County case amount to a delay "requested or agreed to" by Dillard in disposing the Miami County motion to revoke probation? We believe the answer is no.

12

Dillard's motion to withdraw plea in the Johnson County case did not fall within the provisions of the MDDA, and there was no deadline for a hearing on the motion. On the other hand, Dillard's request for disposition of his Miami County probation violation had a 180-day deadline for a hearing. Dillard's transfer to Johnson County may have made it harder to dispose of the Miami County probation violation within 180-days, but it did not make it impossible. Dillard was still in KDOC custody after he was transferred to Johnson County. As Dillard argues in his brief, the various county attorneys could have tried to work together to prioritize the cases based on the deadlines involved. If that process did not work, Miami County could have asked KDOC to return Dillard from Johnson County back to prison so he could be transferred to Miami County to dispose of the probation violation because of the deadline Miami County was facing. Here, the record does not reflect that Miami County made any effort to have Dillard returned within the deadline after it learned that he had been transported to Johnson County.

As for the State's manipulation argument, Dillard moved to withdraw his plea in the Johnson County case on February 11, 2019, and when he filed the motion the record does not reflect that he had any way of knowing when or if it would be set for a hearing. Dillard signed his application under the MDDA for final disposition of the motion to revoke probation on March 4, 2019, and the Miami County District Court received the request on March 11, 2019. Miami County issued a transport order for Dillard on March 18, 2019. But as it turned out, Miami County learned that on March 19, 2019—before KDOC received Miami County's transport order—Dillard had been transported from EDCF to the Johnson County Jail for his motion to withdraw plea. Dillard had a right to seek available legal relief in his Johnson County criminal case, and it is hard to see how he was manipulating the system under these facts.

Under these facts, we disagree that Dillard's motion to withdraw plea in the Johnson County case amounted to a delay "requested or agreed to" by Dillard in disposing the Miami County motion to revoke probation under K.S.A. 2020 Supp. 22-

13

4303(b)(2). Under the plain language of the MDDA, the State failed to give Dillard a hearing on the motion to revoke probation within 180 days of his request for final disposition, and none of the statutory provisions to toll the deadline apply. As a result, the district court lacked jurisdiction over the motion to revoke probation, and the motion must be dismissed with prejudice. K.S.A. 2020 Supp. 22-4303(b)(4).

Dillard asks this court to "reverse the district court's decision, vacate [his] sentence, and remand this case to the district court with directions that Dillard be discharged." But this request is beyond the MDDA's remedy for the violation. In this situation, the MDDA provides that the motion to revoke probation will have no "further force or effect, and the court shall dismiss it with prejudice." K.S.A. 2020 Supp. 22-4303(b)(4). For Dillard, this means that the State's motion to revoke probation filed on July 13, 2018, alleging that Dillard failed to report to an inpatient treatment facility, must be dismissed with prejudice. But Dillard is not entitled to be "discharged" from the Miami County case. Instead, he remains convicted of possession of methamphetamine, and the status of his case is the same as before the State filed the motion to revoke probation. Thus, we reverse the district court's decision to revoke Dillard's probation for lack of jurisdiction and remand with directions for the district court to dismiss the July 13, 2018 motion to revoke probation with prejudice.

Reversed and remanded with directions.