NOT DESIGNATED FOR PUBLICATION

No. 124,371

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

BRODY JOE KAHLE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Cowley District Court; NICHOLAS ST. PETER, judge. Opinion filed January 27, 2023. Reversed and remanded with directions.

*Ian T. Otte*, deputy county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellee.

Before MALONE, P.J., HURST and COBLE, JJ.

PER CURIAM:  The State appeals the district court's dismissal of a felony theft charge filed against Brody Joe Kahle after finding that the State failed to present sufficient evidence at the preliminary hearing to establish probable cause that Kahle committed the offense. Based on our review of the record, we find that the State presented sufficient circumstantial evidence at the preliminary hearing for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief that Kahle committed felony theft. Thus, we reverse the district court's dismissal of the felony theft charge and remand with directions for the district court to reinstate the charge.

1

FACTS

On May 1, 2019, Barry and Noreen Patton threw a party at a house they owned in Winfield, Kansas. Kahle and his wife, Nicole, were staying in the house next door; the house was owned by a woman named "Mae." On the morning of the party, Kahle asked Noreen if he could "borrow some electricity" to jump-start his van. Noreen obliged, telling Kahle "that that would be fine" and letting him run an extension cord from an exterior outlet on the backside of their detached garage to Kahle's van.

Later that day, Noreen and Barry noticed that the extension cord was not connected to Kahle's van—it was now running into the house. That situation was not acceptable to the Pattons, so Noreen disconnected the extension cord. Later that evening, Barry turned off the breaker inside the garage so that Kahle would be unable to use the outlet on the exterior wall of the garage. Barry then locked up the garage to the extent possible, although the latch on one of the garage doors was not secure.

The next morning, the Pattons were preparing to leave the country for an event because Barry is a renowned player of "[r]hythm bones"—an antique percussion instrument made of wood and bone—and often travels for "workshops . . . to show people of the world how to play them[.]" Before leaving, the Pattons noticed that their garage "had been broken into." Barry explained that "the door had been slit open to the front of the garage, and put back, but not latched." Barry soon discovered the circuit breaker had been turned back on and many items of property were missing from the garage. The missing items included lighting and stage equipment, bottles of liquor, and a suitcase that contained clothing, CDs, and several sets of "bones." The estimated value of the missing property was more than $5,000. The Pattons then called the police to report the incident. When the police arrived, the Pattons reported the details and suggested that their neighbor, Kahle, was a likely suspect.

Later that morning, Noreen spoke with Brandon Faber, a handyman for Mae who was working in Kahle's backyard. Faber stated that Mae had asked him to clean up the backyard of the house that morning, and while doing so, he found an extension cord in the shed with "all kinds of electronics and stuff," including, cords, concert and stage lighting, and other stage props. Faber found "most of the Patton's missing property in the shed . . . and under tarps in the yard." Faber assured the Pattons that he was not responsible for the theft and that he had never been in the shed before that day.

After the property was recovered, Deputy Brian Shepard returned and began investigating the crime. Shepard soon learned that Kahle had recently been arrested for an unrelated incident, so he went to the jail to speak with him. After waiving his *Miranda* rights, Kahle told Shepard that the Pattons had let him "borrow some electricity" to get his car running, but he had moved the extension cord to the inside of his house so he could power his refrigerator. Although Kahle admitted that he had continued to use the extension cord after the Pattons told him he was not allowed to do so, he denied entering the garage, claiming he simply plugged the cord back into the exterior outlet after Noreen had unplugged it. Kahle also denied knowing anything about the Pattons' items of property that were found in his shed and under tarps in his yard.

On October 3, 2019, the State charged Kahle with nonresidential burglary and felony theft. The district court began the preliminary hearing on January 26, 2021, but because of an officer's illness, the district court completed the hearing on March 11, 2021. The State presented no evidence at the preliminary hearing that anyone saw Kahle in the Pattons' garage or removing their property. After hearing the evidence, the district court found probable cause to bind Kahle over for trial on the nonresidential burglary charge but not the felony theft charge. The district court explained:

> "Regarding the offense of theft, it's a little bit murkier. While I agree with the
> state that a reasonable inference could be made, I think the best reasonable inference

3

could be that someone associated with the property next door removed the items that were listed, and that were taken, primarily because they were found at that location and were covered up. And because, while the time period—we're talking about a pretty short time period, probably 12 hours or so—from when Mr. Patton locked everything up, and when the next morning it was discovered that items were missing.

"And again, they were found over on the property associated with Mr. Kahle. So essentially we have a reasonable inference that Mr. Kahle was in the garage; that he entered without permission; that he had taken electricity; that we have the items that were found over on property associated with him that was covered up. What we're missing is a little bit about whether or not it was Mr. Kahle that moved those items and property, or perhaps someone else associated with it."

The State filed a written motion for the district court to reconsider its ruling. At a hearing on April 19, 2021, the district court reiterated its finding that the State had failed to establish probable cause to support the felony theft charge, but the district court did find that the State had provided sufficient evidence to support a charge for "misdemeanor theft of electricity." The State requested dismissal of the remaining charges, which the district court granted without prejudice. The State then brought this appeal.

ANALYSIS

On appeal, the State claims the district court erred in finding that the State presented insufficient evidence at the preliminary hearing to establish probable cause that Kahle committed felony theft. The State asserts that Kahle's admission to using the Pattons' electricity after the breaker inside the garage had been shut off and the location of the stolen items would lead a reasonable person to believe that Kahle committed the offense. Kahle asserts the district court correctly dismissed the felony theft charge after finding the State failed to show probable cause. An appellate court exercise unlimited review when analyzing a district court's probable cause finding at a preliminary hearing. *State v. Rozell*, 315 Kan. 295, 305, 508 P.3d 358 (2022).

4

Before being bound over for trial, "every person charged with a felony shall have a right to a preliminary examination before a magistrate, unless such charge has been issued as a result of an indictment by a grand jury." K.S.A. 2021 Supp. 22-2902(1). The magistrate shall then bind the defendant over for trial if the evidence shows that (1) a felony has been committed and (2) there is probable cause to believe that the accused committed the crime. K.S.A. 2021 Supp. 22-2902(3); *State v. Washington*, 293 Kan. 732, 733, 268 P.3d 475 (2012). If the magistrate finds there is not probable cause to believe the defendant committed the charged crime, then the magistrate "shall discharge the defendant." K.S.A. 2021 Supp. 22-2902(3).

"'Probable cause at a preliminary examination signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" *Rozell*, 315 Kan. at 305. This is not a strenuous evidentiary standard. To determine whether the State has met this burden, the magistrate does not pass on the credibility of the witnesses, and when the evidence conflicts, the magistrate must accept the version most favorable to the State. 315 Kan. at 305. It is not the province of the district court "to determine the wisdom of the decision to file charges or to determine whether the possibility of a conviction is likely or remote." *State v. Anderson*, 270 Kan. 68, 71, 12 P.3d 883 (2000).

Kansas courts have long held that a conviction for even the gravest offense may stem from circumstantial evidence. See, e.g., *State v. Banks*, 306 Kan. 854, 858, 397 P.3d 1195 (2017). Thus, circumstantial evidence may support a probable cause finding. "[C]ircumstantial evidence affords a basis for a reasonable inference by the [fact-finder] regarding a fact at issue." *State v. Logsdon*, 304 Kan. 3, Syl. ¶ 3, 371 P.3d 836 (2016). A fact-finder may "infer the existence of a material fact from circumstantial evidence, even though the evidence does not exclude every other reasonable conclusion or inference." *State v. Scaife*, 286 Kan. 614, 618, 186 P.3d 755 (2008).

5

The crime involved here, felony theft under K.S.A. 2018 Supp. 21-5801(a)(1) and (b)(3), required the State to provide evidence that Kahle obtained or exerted unauthorized control over property of a value of at least $1,500 with an intent to permanently deprive the owner of its possession, use, or benefit. The parties' sole focus is whether there was sufficient evidence to find that Kahle was the individual who took the property from the Pattons' garage—that is, evidence of Kahle's identity as the perpetrator. Identity of the perpetrator of an offense is an element of every crime in Kansas. See *State v. Maggard*, 16 Kan. App. 2d 743, 752, 829 P.2d 591 (1992) (explaining that K.S.A. 60-455 evidence was relevant because the identity of the defendant was an element of the crime).

The district court found that the only evidence that Kahle stole the property from the garage was circumstantial. The State readily concedes this point. But it still contends that the evidence it presented was sufficient for a person of ordinary prudence and caution to entertain a reasonable belief that Kahle committed the theft. The incriminating circumstances linking Kahle to the theft include:

- Barry Patton turned off the circuit breaker in the garage on the night of May 1, 2019;
- The only way to power the exterior power outlet was by turning the breaker inside the garage back on;
- Barry locked the garage to the extent possible that evening; the garage could still be opened because one of the latches was not secure;
- The garage was broken into sometime between the night of May 1 and the morning of May 2 and more than $5,000 worth of property was taken;
- The circuit breaker was turned back on when the Pattons discovered the break-in;
- Kahle admitted that he used the Pattons' electricity through an extension cord plugged into the exterior garage outlet without permission even after

6

Noreen Patton had unplugged the extension cord and Barry Patton had turned off the breaker inside the garage;

- The extension cord was running into the house where Kahle was staying; and

- The Pattons' missing property was found in a shed located on the property Kahle was occupying as well as under tarps in the yard.

The district court found from this evidence that "we have a reasonable inference that Mr. Kahle was in the garage; that he entered without permission; that he had taken electricity"; but there was insufficient evidence to find probable cause that Kahle took the property inside the garage. But if there was a reasonable inference that Kahle broke into the garage to turn the electricity back on—and there was—then there was also a reasonable inference that Kahle took the property that was found a short time later in the shed and under some tarps in the backyard of the house where Kahle was staying. This evidence was sufficient to establish probable cause at the preliminary hearing that Kahle committed the theft.

In finding the State's evidence was insufficient for probable cause, the district court focused on the fact that someone else could have committed the theft: "What we're missing is a little bit about whether or not it was Mr. Kahle that moved those items and property, or perhaps someone else associated with it." Indeed, some evidence at the preliminary hearing cast suspicion on Faber, the handyman for Mae who was working in the backyard and discovered the missing property. But the State's evidence to support probable cause of the accused's guilt at a preliminary hearing need not rule out every other reasonable possibility of how the crime was committed. *Scaife*, 286 Kan. at 618.

Kahle argues there was no direct evidence that he entered the Pattons' garage, so the district court would have needed to engage in impermissible inference stacking to find that he committed the theft. He contends the inference that he broke into the garage

7

to turn the electricity back on cannot be used to support an inference that he took the property from the garage.

The Kansas Supreme Court has stated that "convictions based entirely upon circumstantial evidence '"can present a special challenge to the appellate court"' because '"the circumstances in question must themselves be proved and cannot be inferred or presumed from other circumstances."' [Citations omitted.]" *Banks*, 306 Kan. at 859. That is, Kansas courts will not countenance a *conviction* when the defendant's guilt relies on inferences that are built upon other inferences. But Kansas cases applying the rule against inference stacking consistently focus on guilt determinations made *at trial*, where the State's burden of proof is beyond a reasonable doubt. See *State v. Valdez*, 316 Kan. 1, 11, 512 P.3d 1125 (2022) ("When the State asks a jury to make a presumption based on other presumptions, it does not carry its burden to present sufficient evidence to sustain a criminal conviction."); *State v. Aguirre*, 313 Kan. 189, 219, 485 P.3d 576 (2021) (finding jury did not rely on impermissible inference stacking in finding defendant guilty at trial); *State v. Colson*, 312 Kan. 739, 753, 480 P.3d 167 (2021) (same); *State v. Gibson*, 311 Kan. 732, 743-44, 466 P.3d 919 (2020) (same); *State v. Gonzalez* 311 Kan. 281, 288-89, 460 P.3d 348 (2020) (same); *Banks*, 306 Kan. at 859 (same). Kahle provides no authority to support the proposition that the rule against inference stacking applies to a probable cause finding at a preliminary hearing.

Based upon the evidence presented at the preliminary hearing, the district court reasonably inferred that Kahle entered the garage on the night in question to flip the breaker back on. The district court also could have reasonably inferred that Kahle stole the items from inside the garage because they were found a short time later in the shed and under some tarps in the backyard of the house where Kahle was staying. These are separate reasonable inferences to support a probable cause finding for each charge at the preliminary hearing, and we do not necessarily agree with Kahle's argument that the district court would have needed to engage in impermissible inference stacking to find

that Kahle committed felony theft. But in any event, the rule in Kansas on impermissible inference stacking only applies to evidence sufficient to support a conviction beyond a reasonable doubt; it does not apply to a probable cause finding made by a magistrate at a preliminary hearing.

In sum, Kahle admitted to using the Pattons' electricity after the power to the exterior outlet had been turned off. To do so, Kahle presumably entered the garage that night or early the next morning to flip the breaker back on. Around this same time, property was stolen from inside the garage, and those stolen items were found a short time later in the shed and under some tarps in the backyard of the house where Kahle was staying. We conclude the State presented sufficient circumstantial evidence at the preliminary hearing for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief that Kahle was the person who stole the property from the Pattons' garage. Thus, we reverse the district court's dismissal of the felony theft charge and remand with directions for the district court to reinstate the charge.

Reversed and remanded with directions.